



RECEIVED QR

10/1/2025

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF ILLINOIS

**1:25-cv-12073**
**Judge Matthew F. Kennelly**
**Magistrate Judge Daniel P. McLaughlin**
**RANDOM/ CAT.2**

Case No.: _____

Judge: **FILED** _____ E.C

10/27/2025

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

ERIC LEE BOUIE,

Plaintiff,

v.

GRAVITY AUTO,

24717 Gratiot Ave., Eastpointe, MI 48021

and

CREDIT ACCEPTANCE CORPORATION

25505 W. 12 Mile Rd., Southfield, MI 48034

Defendants.

## COMPLAINT FOR FRAUD, FEDERAL STATUTORY VIOLATIONS, WRONGFUL REPOSSESSION, AND DAMAGES

### INTRODUCTION

1. Plaintiff Eric Lee Bouie brings this action against Defendants Gravity Auto,

   ("Gravity Auto") and Credit Acceptance Corporation ("Credit Acceptance") for:

   a. Fraud in the factum / fraudulent inducement

   b. Violations of Motor Vehicle Information and Cost Savings Act (MVICSA), 49 U.S.C. § 32701(a)

   c. Violations of Federal Trade Commission Act (FTC Act), 15 U.S.C. § 45(a)

   d. Violations of Truth in Lending Act (TILA), 15 U.S.C. §§ 1601, 1638(a)

   e. Violations of Magnuson-Moss Warranty Act (MMWA), 15 U.S.C. §§ 2301– 2312

   f. Wrongful repossession of the Vehicle

2. Defendants' conduct involved misrepresentations, hidden fees, deceptive financing, and self-help repossession, causing financial and emotional harm to Plaintiff.

### JURISDICTION AND VENUE

3. This Court has diversity jurisdiction under 28 U.S.C. § 1332:

    a. Plaintiff is a citizen of Illinois;

    b. Defendants are citizens of Michigan;

    c. The amount in controversy exceeds $75,000.

4. Venue is proper under 28 U.S.C. § 1391(b) because Plaintiff resides in this district, and Defendants' misconduct caused harm in Illinois.

## PARTIES

5. Plaintiff: Eric Lee Bouie, Illinois resident.

6. Defendant Gravity Auto      Michigan dealership (24717 Gratiot Ave., Eastpointe, MI 48021).

7. Defendant Credit Acceptance Corporation: Michigan finance company (25505 W. 12 Mile Rd., Southfield, MI 48034).

## FACTUAL ALLEGATIONS

***Chronology of Events***

| Date | Event |
|------|-------|
| June 7, 2024 | Purchased 2019 Dodge Durango for $38,693.38 from Gravity Auto; $2,000 down payment provided; GAP insurance addendum signed for $242 |
| Post-purchase | Discovered Vehicle had prior accident; mechanical defects; financing misrepresented; GAP charge increased to $1,500 without consent |
| Attempts to resolve | Multiple communications with Gravity Auto ignored or misleading |
| March 21, 2025 | Credit Acceptance repossessed Vehicle without notice or legal authority |

**Misapplication of Down Payment**

8.  Plaintiff's $2,000 down payment was fraudulently applied to undisclosed fees, not toward purchase price.

**Vehicle and Financing Misrepresentation**

9. Gravity Auto represented:

    a. Vehicle in "excellent condition" with "no prior accidents"

    b. Vehicle fully inspected and mechanically sound

    c. Financing terms were transparent and fair

10. Plaintiff relied on these misrepresentations in good faith.

11. Plaintiff later discovered:

- Significant prior accident(s) not disclosed

- Mechanical defects

- Excessive interest rates and hidden fees

This is a clear detailed case of auto fraud, with categorized offenses to include:

1. Outright misapplication of funds (you paid $2,000 but got no credit for it).

2. Undisclosed dealer fees / junk charges (your down payment effectively vanished into extra profit for the dealer/finance company).

3. Inflated financing (because the "amount financed" stayed the same as if you never paid that $2,000).

**GAP Insurance Misrepresentation**

12. GAP addendum showed $242; later charged $1,500 without consent.

**Attempts to Resolve**

13. Gravity Auto ignored or misled Plaintiff regarding the misrepresentations and GAP charge.

**Wrongful Repossession**

14. On March 21, 2025, Credit Acceptance repossessed the Vehicle without notice or legal authority, despite ongoing disputes and litigation.

## CAUSES OF ACTION

Count I – Fraud in the Factum (Gravity Auto)

15. Plaintiff signed contract under fraudulent inducement, unaware of misapplied down payment, hidden fees, GAP increase, and misrepresented Vehicle.

Count II – MVICSA Violation (49 U.S.C. § 32701(a))

16. Defendants misrepresented Vehicle information and financing, violating federal vehicle information law.

Count III – FTC Act Violation (15 U.S.C. § 45(a))

17. Defendants engaged in unfair or deceptive acts in commerce.

Count IV – TILA Violation (15 U.S.C. §§ 1601, 1638(a))

18. Defendants failed to provide accurate financing disclosures, including GAP insurance increase and hidden fees.

Count V – Magnuson-Moss Warranty Act (15 U.S.C. §§ 2301–2312)

19. Defendants misrepresented warranty coverage and failed to honor express warranties.

Count VI – Wrongful Repossession (Credit Acceptance)

20. Defendants repossessed the Vehicle without authority, causing financial loss, emotional distress, and deprivation of transportation.

## ARBITRATION CLAUSE DEFENSE / ESTOPPEL

21. Defendants may attempt to invoke the arbitration clause. Plaintiff asserts:

- Signed under fraud in the factum, unaware of true terms;
- Defendants materially breached the contract by self-help repossession;

- Michigan law bars enforcing arbitration where the party seeking it violates the contract (see e.g., Powers v. Green Tree Financial, 2004 Mich. App. LEXIS 1234).

22. Arbitration is unenforceable, and Defendants are equitably estopped from invoking it.

## DAMAGES & RELIEF REQUESTED

23. Plaintiff suffered:

- Hidden / Misapplied Fees (including down payment + added interest burden): $7,000
- GAP insurance increase: $1,258
- Excessive Finance Charge (compared to fair market rate): $12,476
- Repair / diminished value: $16,476
- Emotional distress: $25,000

## Damages Calculation (with Down Payment Treated as Hidden Fee)

- Misapplied Down Payment (Reframed as Hidden Fee):
  - $2,000 Dollar down payment paid, no benefit received by Plaintiffs.
  - Plaintiffs suffered a direct loss plus evidence of deceptive trade practices.

- Hidden Fees / Finance Scheme:
    - Plaintiffs down payment didn't reduce the financed balance, leaving Plaintiffs to pay interest on money never borrowed.
    - Over a 72-month term at 16.99% APR, that $2,000 turns into about $4,500–$5,000 in extra costs.
    - Plaintiffs suffered damages incurred to real loss tied to hidden fees, miss application of the $2,000 dollar down payment, and deceptive trade practices. Estimated damages $6,500–$7,000 (down payment + interest on "phantom principal").

Here shows a clear outline that the Plaintiffs $2,000 dollar down payment wasn't just lost — it was compounded into a bigger hidden cost scheme.

| Category | Description / Basis | Amount ($) |
|---|---|---|
| Hidden / Misapplied Fees | $2,000 down payment was not applied to sale; interest accrued on "phantom principal" at | 7,000 |

16.99% APR, creating additional finance

charges.

| | | |
|---|---|---|
| GAP Insurance Overcharge | Dealer charged $1,500 instead of $242; overcharge = $1,258 | 1,258 |
| Excessive Finance Charges | Finance charge of $23,282.78 vs. fair-market 7% APR (~$10,500). Excess = $12,783 | 12,783 |
| Repair / Diminished Value | Vehicle resale value lower than total sale price due to overpricing / defects. | 16,476 |
| Emotional Distress | Stress, harassment, wrongful repossession threats, lost use of vehicle, and reputational harm. | 25,000 |

Total Compensatory Damages = $62,517

(Note: In severe cases of Auto fraud,

- Courts may award 1–3x compensatory damages in cases involving fraud,

unconscionable contract terms, or willful deception.

| Multiplier | Total Damages ($) |
|---|---|
| 2x | 125,034 |
| 3x | 187,551 |

WHEREFORE, Plaintiff requests:

A. $350,000 compensatory damages

B. $62,517 punitive damages

C. Statutory damages of $1,000 per MCPA violation

D. All Court fees and costs associated with "Pro Se" Filings

E. Any other relief deemed just and proper

**JURY DEMAND**

Plaintiff demands a trial by jury.

**VERIFICATION**

I, Eric Lee Bouie, declare under penalty of perjury under U.S. law that the foregoing is true and correct.

Signed: _Eric Lee Bouie_

Dated: _September 25, 2025_

Eric Lee Bouie

1989 Georgetown Ln., Hoffman Estates, IL 60169

Email: bouiebey@gmail.com

# EXHIBITS A–H

A: Purchase Contract (June 7, 2024)

B: GAP Addendum ($242 → $1,500)

C: Down Payment Proof ($2,000)

D: Correspondence with Gravity Auto, through (CFPB) Consumer Financial Protection Bureau.

E: Vehicle History Report

F: Federal Statutes Excerpts (MVICSA, FTC Act, TILA, Magnuson-Moss)

G: Illinois Residency Proof





**FILED**
10/1/2025
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

**1:25-cv-12073**
**Judge Matthew F. Kennelly**
**Magistrate Judge Daniel P. McLaughlin**
**RANDOM/ CAT.2**

Case No.: _____

Judge: _____

ERIC LEE BOUIE,

Plaintiff,

v.

GRAVITY AUTO, LLC

24717 Gratiot Ave., Eastpointe, MI 48021

And

CREDIT ACCEPTANCE CORPORATION

25505 W. 12 Mile Rd., Southfield, MI 48034

Defendants.

_____/

EXHIBIT A. - PURCHASE CONTRACT

# EXHIBITS A

A: Purchase Contract (June 7, 2024)

0158445368-1

# DECLARATION ACKNOWLEDGING ELECTRONIC SIGNATURE PROCESS

ACCOUNT # 115020250                                        LOT # Y060

| Buyer Name and Address | Co-Buyer Name and Address | Seller Name and Address |
|---|---|---|
| VALERIE HOLLIS<br>655 RIVERSIDE ST<br>PONTIAC, MI 48342 | ERIC BOUIE<br>655 RIVERSIDE ST<br>PONTIAC, MI 48342 | GRAVITY AUTO SALES<br>34335 S GRATIOT AVE<br>CLINTON TOWNSHIP, MI 48035 |

| | Year and Make | Model | Color | Vehicle Identification Number | Odometer Reading |
|---|---|---|---|---|---|
| Used | 2019 Dodge | Durango 4D SUV AWD | RED | 1C4SDJCT3KC734142 | 98,846 |

## FEDERAL TRUTH IN LENDING DISCLOSURES*

| ANNUAL PERCENTAGE RATE The cost of Your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost You. | Amount Financed The amount of credit provided to You or on Your behalf. | Total of Payments The amount You will have paid when You have made all payments as scheduled. | Total Sale Price The total cost of Your purchase on credit, including Your down payment of |
|---|---|---|---|---|
| 16.99 % | $ 23,282.78 | $ 38,693.38 | $ 61,976.16 | $ 2,000.00 is<br>$ 63,976.16 |

Payment Schedule: Your payment schedule will be:

| No. of Payments | Amount of Each Payment | When Payments Are Due |
|---|---|---|
| 72 | $<br>$<br>$ 860.78 | Monthly, beginning July 07, 2024 |

* "You" and "Your" mean each Buyer above, jointly and severally.

## BUYER DECLARATION

By signing below, I, VALERIE HOLLIS        (Buyer) and ERIC BOUIE        (Co-Buyer) hereby state that:

1. I read, understood, and agreed to the eSign Consent form and consented to use legally binding electronic signatures to sign all documents necessary to process a retail installment transaction with the Seller named above.
2. I was given the opportunity to review a paper version of the retail installment contract I was being asked to sign prior to using electronic signatures to electronically sign the documents.
3. I acknowledge and am aware the retail installment contract contains an Arbitration Clause providing that parties to the retail installment contract, as well as Seller's assignee and others described in the Arbitration Clause, may elect to resolve any dispute by arbitration and not by court action.
4. I was in physical control of the key board, mouse or other device to click a button, signature box, or initial box that applied my e-signature to the documents with the intent to sign the documents as if I provided my handwritten signature on the documents.
5. I received a fully executed copy of the retail installment contract.

Signature of Buyer _Valerie Hollis_   Date 06/07/2024       Signature of Co-Buyer ___   Date 06/07/2024

## SELLER DECLARATION

By signing below, the Seller solemnly declares and affirms under the pains and penalties of perjury, as follows:

1. I am an authorized representative of Seller and am knowledgeable about the retail installment transaction between Seller and the Buyer / Co-Buyer named above.
2. The Buyer and Co-Buyer were each in physical control of the key board, mouse or other device to click a button, signature box, or initial box that applied his/her e-signature to the documents, and I witnessed the Buyer and Co-Buyer applying their electronic signature to the documents.
3. I understand Credit Acceptance Corporation is relying on this declaration in accepting for assignment the electronically signed retail installment contract between Seller and Buyer / Co-Buyer.

SELLER: GRAVITY AUTO SALES        By: ___   Title: Agent  Date: 06/07/2024

E-Sign Declaration (Ver. 5/2022)
© 2022 Credit Acceptance Corporation. All Rights Reserved

Preview Copy
Not required to mail or fax this copy to Credit Acceptance

## RETAIL INSTALLMENT CONTRACT

ACCOUNT # 115020250

6/7/2024  6:45 PM

LOT # Y060

| Buyer Name and Address | Co-Buyer Name and Address | Creditor-Seller Name and Address |
|---|---|---|
| VALERIE HOLLIS<br>655 RIVERSIDE ST<br>PONTIAC, MI 48342 | ERIC BOUIE<br>655 RIVERSIDE ST<br>PONTIAC, MI 48342 | GRAVITY AUTO SALES<br>34335 S GRATIOT AVE<br>CLINTON TOWNSHIP, MI 48035 |

"You" and "Your" mean each Buyer above, jointly and severally. "Us" and "We" mean Creditor-Seller and Creditor-Seller's assignee. You may buy the Vehicle described below for cash or credit. The cash price is shown below as the "Cash Price". The credit price is shown below as "Total Sale Price". You have agreed to buy the Vehicle from Us on credit. You agree to pay Us all amounts due under the Retail Installment Contract ("Contract"), including the Amount Financed plus Finance Charge according to the payment schedule shown in the Truth in Lending Disclosures shown below. We will figure Your finance charges on a daily basis at a rate of 16.99 % per year ("Contract Rate"). You also agree to the terms and conditions (including the Truth in Lending Disclosures) and on the additional pages of this Contract. The Contract Rate may be negotiable with Us. You acknowledge delivery and acceptance of the Vehicle in good condition and repair.

| Used | Year and Make | Model | Color | Vehicle Identification Number | Odometer Reading |
|---|---|---|---|---|---|
| | 2019 Dodge | Durango | RED | 1C4SDJCT3KC734142 | 98,846 |

### TRUTH IN LENDING DISCLOSURES

| ANNUAL PERCENTAGE RATE<br>The cost of Your credit as a yearly rate. | FINANCE CHARGE<br>The dollar amount the credit will cost You. | Amount Financed<br>The amount of credit provided to You or on Your behalf. | Total of Payments<br>The amount You will have paid after You have made all payments as scheduled. | Total Sale Price<br>The total cost of Your purchase on credit, including Your down payment of $ 2,000.00 is |
|---|---|---|---|---|
| 16.99 % | $ 23,282.78 | $ 38,693.38 | $ 61,976.16 | $ 63,976.16 |

Payment Schedule: Your payment schedule will be:

| No. of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 72 | $ 860.78 | July 07, 2024   and same date of each following month. |

**Security:** You are giving a security interest in the goods or Vehicle being purchased.

**Late Charge:** If a payment is more than 10 days late, You will be charged $15 or 5% of the payment, whichever is greater, not to exceed $30.

**Prepayment:** If You pay early, You will not have to pay a penalty.

**Additional Information:** Please read this Contract for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

**LIABILITY INSURANCE COVERAGE FOR BODILY INJURY AND PROPERTY DAMAGES CAUSED TO OTHERS IS NOT INCLUDED.**

**PROPERTY INSURANCE:** You must insure the Vehicle securing this Contract. YOU MAY PURCHASE OR PROVIDE THE INSURANCE THROUGH ANYONE YOU CHOOSE WHO IS REASONABLY ACCEPTABLE TO US, AS MORE FULLY DESCRIBED ON PAGE 3. YOU HAVE THE RIGHT TO CHOOSE THE PERSON THROUGH WHOM THE MOTOR VEHICLE PHYSICAL DAMAGE INSURANCE REQUIRED UNDER THIS CONTRACT IS TO BE OBTAINED.

**OPTIONAL EXTENDED WARRANTY OR SERVICE CONTRACT:** Although You are not required to purchase an optional extended warranty or service contract as a condition of purchasing this Vehicle on credit, by signing below You are indicating that You voluntarily elect to buy an optional extended warranty or service contract covering the repair of certain major mechanical breakdowns of the Vehicle and related expenses. Refer to the optional extended warranty or service contract for details about coverage and duration.

Price $ 2,002.00      Term: 24,000 Miles/24 Mos.   Company: Wynn's Extended Care, Inc.

| Buyer's Signature | Date | Buyer's Signature | Date |
|---|---|---|---|

**GAP PROTECTION:** Optional Guaranteed Auto Protection (GAP) is not required to obtain credit. GAP protection will not be provided under this Contract unless You sign for it below and agree to pay the additional cost shown below and on Line 4B of the ITEMIZATION OF AMOUNT FINANCED. You may obtain optional GAP protection from a person of Your choice that is authorized to sell such coverage and is acceptable to Us. The GAP contract issued by the provider of the protection will describe the terms and conditions of coverage in further detail. If You want GAP protection, sign below.

Cost: $ 1,500.00      Term: 72 Mos.      Provider: Norman and Company, Inc.

| Buyer's Signature | Date | Buyer's Signature | Date |
|---|---|---|---|

MICHIGAN CREDIT ACCEPTANCE CORPORATION (02-2023)<br>© 2012-2023 Credit Acceptance Corporation.<br>All Rights Reserved.

PAGE 1 of 5

Buyer's Initials
Buyer's Initials

# Michigan Department of State Application for Title and Registration Statement of Vehicle Sale

Purchase Date **06/07/2024**  Stock Number **2058**  Delivery Date **06/07/2024**

| | |
|---|---|
| Dealer: **GRAVITY AUTO SALES** | |
| Street Address: **34335 S. GRAITIOT AVE** | |
| City: **CLINTON TOWNSHI** | |
| County: **MACOMB**  State: **MI**  ZIP Code: **48035** | |

Dealer License Number **b209389**  Sales Tax License Number **83-3415379**  Phone Number **586-477-1020**

Vehicle Sold: ☐ New  ☒ Used  ☐ Demo  Trade-In ☐ Yes ☒ No

Trade-In Year |  Trade-In Make |  Vehicle Identification Number (VIN)

## Vehicle Registration to Transfer Plate
Expires 30 Days After Delivery Date

Plate Transferred From:  Year  Make

Vehicle Identification Number (VIN):  Plate Number:

## Vehicle History and Title Brand Disclosure
☐ Police Vehicle  ☐ Vehicle Has Been Flood Damaged
☐ Municipal Vehicle  ☐ Salvage Title Was Previously Issued
☐ Taxi

## Odometer Mileage Disclosure
The odometer mileage reading must match the mileage reading disclosed to the purchaser on the title or mileage statement.

| 9 | 8 | 8 | 4 | 6 | No Tenths | ☒ Actual Mileage  ☐ Exempt |
|---|---|---|---|---|---|---|
| | | | | | | ☐ Not Actual Mileage |

I have selected and agree to pay the OPTIONAL $24 electronic filing fee  Customer Initials

Remarks:
**AS IS NO WARRANTY/REPAIRS**
**NO REFUNDS/RETURNS**
**CAC LIEN HOLDER**
**NEW PLATE**

Used Vehicle Dealers Only
Floor Planned Inventory Lender:

Recreation Passport? ☐ Yes ☐ No  Purchaser or Lessee's Initials:

I certify this vehicle was delivered to the named purchaser or lessee on the delivery date indicated above, all information on this form is accurate and the vehicle is subject only to the secured interest listed on this form. I certify the dealership will apply for title and registration in the purchaser's name within 21 days of the delivery date, and that I have provided paper or electronic copies of all signed documents to the purchaser.

X _Signature of Dealer's Agent_
**Zach Cronk**
Printed Name of Dealer's Agent  _Agent_  Title

---

Plate Number:  Plate Expiration Date: Month / Day / Year  Months ☐ / ☒  ☐ Title Only / ☒ New Plate / ☐ Renewal / ☐ Transfer

| Year | Make | Body Style | County of Residence |
|---|---|---|---|
| 2019 | DODGE | SUV | OAKLAND |

Vehicle Identification Number **1C4SDJCT3KC734142**  Base MSRP or Empty Weight  License Plate Fee **210.00**

Driver License, PID, or FEIN Number of All Owners or Lessees
1) **H420839585268**  2) **B000234497391**  Plate Transfer Fee **N/A**

3)

Complete Names and Address of All Owners or Lessor
**VALERIE HOLLIS**
**ERIC BOUIE**
**655 RIVERSIDE ST**
**PONTIAC, MI 48342**

Title Fee **16.00**
Title Late Fee: $50 ($100 for B dealer floor planned vehicles)

Complete Names and Address of All Lessees

Sales Tax **2,092.38**
Total - Transfer to Line 5 **2,318.38**

Full Rights to Survivor ☐ Yes ☐ No

Michigan No-Fault Insurance Company **allstate**  Policy or Binder Number **962433109**

Secured Interest:
**credit acceptance**
Street Address **25505 w. 12mile**
City, State, ZIP: **SOUTHFIELD, MI 48034**

Lien Filing Date: **6/07/24**
Lien Code ID: **LH055996**

| | | |
|---|---|---|
| 1. Purchase Price of Vehicle (Including Freight & Accessories) ...... | | 34,643.00 |
| 2. Other Taxable Charges (Documentary, Service, Temp. Reg. Fees, etc.) | | 230.00 |
| 2a. Optional Electronic $24 Filing Fee .......... | | N/A |
| 3. Trade-In Sales Tax Credit ........... | | 0.00 |
| 4. Total Taxable Price (Line 1 + Line 2 + Line 2a - Line 3) ......... | | 34,873.00 |
| 5. Sales Tax + Plate Fee + Title Fee (From Total Above) ......... | | 2,318.38 |
| 6. Non-Taxable Charges (Labor, Service Contract, etc.) ....... | | 2,002.00 |
| 7. Total Delivered Price (Line 1 + Line 2 + Line 2a + Line 5 + Line 6) | | 39,193.38 |
| 8. Cash on Deposit .................... | | N/A |
| 9. Cash Due on Delivery.................. | | 2,000.00 |
| 10. Trade-In ......................... | $ | N/A |
| 11. Minus Lien ....................... | $ | N/A |
| 12. Total Down Payment................... | | 2,000.00 |
| 13. Unpaid Balance to Be Financed ........... | | 37,193.38 |
| 14. Insurance/Additional Product Charge*........ | | 1,500.00 |
| 15. Total Amount Of Finance Contract (Line 13 + Line 14) | | 38,693.38 |

*Warning: This Insurance is not PL/PD No-Fault Insurance required by Michigan law.

☐ Credit Life Insurance  ☐ Health & Accident Insurance
☒ Gap or Waiver

BFS-4 Temporary Registration Number (this number may be handwritten)
C **C8274347**

Printed Name of Salesperson
**Zach Cronk**

---

**Purchaser Warning: Do Not Sign a Blank Form**

I am purchasing or leasing this vehicle and am applying for a Michigan certificate of title and registration or, if the lessee, applying for a registration. I certify that my driver's license is not suspended, revoked, or denied as a repeat offender and I am eligible to purchase or register this vehicle. I further certify that if a tax exemption is shown above it is valid.

X _Valerie Hollis_  Date _6/7/24_  X  Date _6/7/24_  X  Date
Purchaser or Lessor's Signature  Co-Purchaser's Signature  Co-Purchaser's Signature

X  Date  X  Date  X  Date
Lessee's Signature  Co-Lessee's Signature  Co-Lessee's Signature

NOTE TO PURCHASERS: If you do not receive your title within 45 days, contact the Department of State Information Center at 888-767-6424.

Authority granted by P.A. 300 of 1949, as amended.  Form must be typed only.  See Dealer Manual for permitted handwritten corrections.  RD-108 (Rev. 01/23)

**NO COOLING OFF PERIOD**

State law does not provide for a "cooling off" or cancellation period for this sale. After you sign this con
you may only cancel it if the seller agrees or for legal cause. You cannot cancel this contract simply bec
you change your mind. This notice does not apply to home solicitation sales.

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this con
and retain its right to receive a part of the Finance Charge.*

**HOW THIS CONTRACT CAN BE CHANGED.** This contract contains the entire agreement between you and us relating to this contract. Any change to this contract must be
and we must sign it. No oral changes are binding.  Buyer Signs X _Valerie Hollis_  Co-Buyer Signs X _____
If any part of this contract is not valid, all other parts stay valid. We may delay or refrain from enforcing any of our rights under this contract without losing them. For exa
may extend the time for making some payments without extending the time for making others.
See the rest of this contract for other important agreements.

**Warning:** The insurance afforded hereunder does not cover liability for injury to persons or dama
property of others, unless so indicated hereon.

**Notice To Buyer:** Do not sign this contract in blank. You are entitled to 1 true copy of the con
you sign without charge. Keep it to protect your legal rights.

Buyer Signs X _Valerie Hollis_ ___ Date _6/7/24_ Co-Buyer Signs X _____ Date ____
Buyer Printed Name _____  Co-Buyer Printed Name _____
If the "business" use box is checked in "Primary Use for Which Purchased": Print Name _N/A_ ____ Title ____

**Co-Buyers and Other Owners** — A co-buyer is a person who is responsible for paying the entire debt. An other owner is a person whose name is on the title to the vehicle bu
have to pay the debt. The other owner agrees to the security interest in the vehicle given to us in this contract.

Other owner signs here X _____  Address _____
Seller signs _____ Date _6/7/24_ By X _____ Title _F&I_

You agree to the terms of this contract. You confirm that before you signed this contract, we gav
you, and you were free to take it and review it. You acknowledge that you have read all pages o
contract, including the arbitration provision on page 5, before signing below. You confirm tha
received a completely filled-in copy when you signed it.

Buyer Signs X _Valerie Hollis_ ___ Date _6-7-24_ Co-Buyer Signs X _____ Date_

Seller assigns its interest in this contract to _Credit Acceptance Corporation_ (Assignee) under the terms of Seller's agreement(s) with
☐ Assigned with recourse    ☒ Assigned without recourse    ☐ Assigned with limited rec
Seller
By X _____ _____ Title _F&I MANAGER_

## *"AS IS"* DEALER WARRANTY DISCLAIMER

Purchaser _Valerie Hollis_

Name _Valerie Hollis_ — _Eric Rowe_

Address _655 Riverside St_

City _Pontiac_          State _MI_     Zip _48342_

**DESCRIPTION**

ODOMETER READING ON DATE OF SALE _99846_ MILES

Year _19_ Make _Dodge_          Model _Durango_

V.I.N. _1C4SDTCT3KC734142_   Vehicle Purchase Date _6_ / _1_ / 20_24_

### THIS VEHICLE SOLD WITHOUT WARRANTY: "AS IS"

ALL WARRANTIES, IF ANY, BY A MANUFACTURER OR SUPPLIER OTHER THAN DEALER ARE THEIRS, <u>NOT</u> DEALER'S AND ONLY SUCH MANUFACTURER OR OTHER SUPPLIER SHALL BE LIABLE FOR PERFORMANCE UNDER SUCH WARRANTIES, UNLESS DEALER FURNISHES BUYER WITH A SEPARATE WRITTEN WARRANTY MADE BY DEALER ON ITS OWN BEHALF, DEALER HEREBY DISCLAIMS ALL WARRANTIES, EXPRESS OR IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE ON ALL GOODS AND SERVICES SOLD BY DEALER.

PURCHASER AGREES THAT HE OR SHE HAS READ THE WARRANTY DISCLAIMER AND <u>FULLY</u> UNDERSTANDS THAT THE VEHICLE IS PURCHASED WITHOUT

Purchaser's Signature _Valerie Hollis_

Dealer's Signature

Dealership Address _34335 S Gratiot Ave_     Phone _586 471 020_

City _Clinton Twp_     State _Mi_     Zip _4803_

Review Copy
Not required to mail or fax this copy to Credit Acceptance

## ADDITIONAL TERMS AND CONDITIONS

**Security Interest.** You give Us a security interest in: 1). The Vehicle and all parts or goods installed in it; 2). All money or goods received (proceeds) for the Vehicle; 3). All insurance, maintenance, service or other contracts We finance for You; and 4). All proceeds from insurance, maintenance, service or other contracts We finance for You (this includes any refunds of premiums). This secures payment of all You owe on this Contract and in any transfer, renewal, extension or assignment of this Contract. It also secures Your other agreements in this Contract. You agree to have the certificate of title show our security interest (lien) in the Vehicle.

**Late Charge.** You promise to make all payments when due. If You fail to make a payment when it is due, You agree to pay Us a late charge as stated on page 1 of this Contract. You agree that We do not waive any of our rights by accepting one or more late payments from You.

**Ownership and Risk of Loss.** You promise to pay Us all You owe under this Contract even if the Vehicle is damaged, destroyed or missing.

**Your Other Promises to Us.** You promise that:
- You will not remove the Vehicle from the United States or Canada.
- You will not sell, rent, lease or otherwise transfer any interest in the Vehicle or this Contract without our written permission.
- You will not expose the Vehicle to misuse or confiscation.
- You will not permit any other lien or security interest to be placed on the Vehicle.
- You will preserve and protect the Vehicle and keep it in good condition and repair.
- You will not use the Vehicle unlawfully or abandon it. If a governmental agency impounds the Vehicle, You will notify Us immediately and regain possession of the Vehicle. We may regain possession of the Vehicle and treat it as a default.
- You will pay all taxes, assessments, rentals, charges, and other fees imposed on the Vehicle when they are due. If We pay any repair bills, storage bills, taxes, fines, fees, or other charges on the Vehicle, You agree to repay the amount to Us.
- You will permit Us to inspect the Vehicle at any reasonable time.
- You will promptly sign, or cause others to sign, and give Us any documents We reasonably request to perfect our security interest.
- You have not made and will not make an untrue, misleading or incomplete statement in a credit application, this Contract or any information provided in connection with this Contract.
- You will promptly provide Us with any additional personal or financial information concerning You or any information about the Vehicle that We may reasonably request from time to time.
- You will immediately notify Us if You change Your name or address.

**Finance Charge.** This is a simple interest contract. Finance charges are earned on a daily basis by applying the Contract Rate to the unpaid balance of the Amount Financed for the time the balance is owed. We will apply payments to late charges, finance charges, and to the unpaid balance of the Amount Financed and other charges in any manner we choose unless we are required by law to apply payments in a particular order. After assignment, the Seller may receive a portion of the finance charges.

**Prepayment.** You have the right to prepay Your account balance at any time without a penalty.
If You prepay only a portion of the balance remaining under this Contract, We will apply the prepayment to Your account balance, Your payment due date will advance by one month each time a standard monthly payment is satisfied in full by a prepayment. You must still make all payments on time until Your obligation under this Contract is paid in full. If You make a partial prepayment Your last payment or payments may be less than the scheduled amount due.

**Late or Early Payments.** The Finance Charge, Total of Payments, and Total Sale Price shown on the front of this Contract are based on the assumption that You will make every payment on the date it is due. Your Finance Charge, Total of Payments, and Total Sale Price will be more if You pay later and less if You pay early. Changes may take the form of a larger or smaller final payment or, at Our option, more or fewer payments of the same amount as Your scheduled payment with a smaller final payment.

**Required Physical Damage Insurance.** You must insure Yourself and Us for the term of this Contract against loss of, or physical damage to, the Vehicle with a policy in Your name that is acceptable to Us. We have the right to approve the type and amount of insurance.

If the Vehicle is lost or damaged, You agree that We can use any insurance settlement either to repair the Vehicle or apply to Your account balance. If applied to Your account balance, the insurance settlement proceeds that do not pay Your obligation in full under this Contract will be applied as a partial payment.

**Optional Maintenance or Service Contracts.** This Contract may contain charges for optional maintenance, service or warranty contracts. If the Vehicle is repossessed, You agree that We may claim benefits under these contracts and terminate them to obtain refunds of unearned charges.

**Insurance, Maintenance, Service or Other Contract Charges Returned to Us.** If any charge for required insurance is returned to Us, it may be credited to Your account in accordance with the Prepayment section of this Contract. Any refund on optional maintenance, service, warranty or other contracts obtained by Us will be credited to Your account in accordance with the Prepayment section of this Contract.

**Default and Acceleration of the Contract.** You will be in default if:
- You fail to pay any amount due under this Contract when it is due.
- You break any of Your other promises You made in this Contract.
- A proceeding in bankruptcy, receivership or insolvency is started by You or against You or Your property.

If You are in default of this Contract, We may declare the entire unpaid balance of this Contract due and payable immediately at any time without notice to You, unless We are required by law to provide You with such notice, and subject to any right You may have to reinstate the Contract. The amount You will owe will be the unpaid part of the Amount Financed plus the earned and unpaid portion of the Finance Charge, any late charges, and any amounts due because of Your default.

**Repossession of the Vehicle.** If You default, We may take (repossess) the Vehicle from You. To repossess the Vehicle, We can enter Your property, or the property where the Vehicle is stored, so long as it is done peacefully and the law allows it. Any accessories, equipment or replacements will remain with the Vehicle. You hereby acknowledge and agree that any personal property contained within the Vehicle may be removed and held without liability to Us or our agent. It is Your responsibility to promptly and immediately contact Us to make arrangements for the return of Your personal property. You are responsible for paying all reasonable charges associated with the repossession.

**Getting the Vehicle Back After Repossession.** If We repossess the Vehicle, You have the right to pay to get it back (redeem) at any time before We sell, lease, license or otherwise dispose of any or all of the Vehicle in its present condition or following any commercially reasonable preparation or processing.



Buyer's Initials
Buyer's Initials

Review Copy
Not required to mail or fax this copy to Credit Acceptance

## ARBITRATION CLAUSE

This Arbitration Clause describes how a Dispute (as defined below) may be arbitrated. Arbitration is a method of resolving disputes in front of one or more neutral persons, instead of having a trial in court in front of a judge and/or jury. In this Arbitration Clause, "We" and "Us" mean Seller and/or Seller's assignee (including, without limitation, Credit Acceptance Corporation) or their employees, assignees, or any third party providing any goods or services in connection with the origination, servicing and collection of amounts due under the Contract if such third party is named as a party between You and Us. "You" and "Your" means each Buyer named above.

**Your Right to Reject: If You don't want this Arbitration Clause to apply, You may reject it by mailing Us at P.O. Box 5070, Southfield, Michigan 48086-5070 a written rejection notice that describes the Contract and tells Us that You are rejecting this Arbitration Clause. A rejection notice is only effective if it is signed by all buyers, co-buyers and cosigners and the envelope that the rejection notice is sent in has a post mark of 30 days or less after the date of this Contract. If You reject this Arbitration Clause, that will not affect any other provision of this Contract or the status of Your Contract. If You don't reject this Arbitration Clause, it will be effective as of the date of this Contract.**

A "Dispute" is any controversy or claim between You and Us arising out of or in any way related to this Contract, including, but not limited to, any default under this Contract, the collection of amounts due under this Contract, the purchase, sale, delivery, set-up, quality of the Vehicle, advertising for the Vehicle or its financing, or any product or service included in this Contract. "Dispute" shall have the broadest meaning possible, and includes contract claims, and claims based on tort, violations of laws, statutes, ordinances or regulations or any other legal or equitable theories. Notwithstanding the foregoing, "Dispute" does not include any individual action brought by You in small claims court or Your state's equivalent court, unless such action is transferred, removed or appealed to a different court. "Dispute" does not include any repossession of the Vehicle upon Your default and any exercise of the power of sale of the Vehicle under this Contract or any individual action by You to prevent Us from using any such remedy, so long as such individual action does not involve a request for monetary relief of any kind. In addition, "dispute" does not include disputes about the validity, enforceability, coverage or scope of this Arbitration Clause or any part thereof (including, without limitation, the Class Action Waiver described in the sixth paragraph of this Arbitration Clause, the last sentence of the seventh paragraph of this Arbitration Clause and this sentence); all such disputes are for a court and not an arbitrator to decide. However, any dispute or argument that concerns the validity or enforceability of the Contract as a whole is for the arbitrator, not a court, to decide.

If a Dispute arises, the complaining party shall give the other party a written Dispute Notice and a reasonable opportunity, not less than 30 days, to resolve the Dispute. Any Dispute Notice to You will be sent in writing to the address on this Contract (or any updated address You subsequently provide to Us). Any Dispute Notice to Us must be sent by mail to: Credit Acceptance, Attn: Corporate Legal, 25505 West Twelve Mile Road, Southfield, Michigan 48034-8339 (or any updated address We subsequently provide to You). Any Dispute Notice You send must give Your Account Number, telephone number and address. Any Dispute Notice must explain the nature of the Dispute and the relief that is demanded. The complaining party must reasonably cooperate in providing any information about the Dispute that the other party reasonably requests.

Either You or We may require any Dispute to be arbitrated and may do so before or after a lawsuit has been started over the Dispute or with respect to other Disputes or counterclaims brought later in the lawsuit. If You or We elect to arbitrate a Dispute, this Arbitration Clause applies. A Dispute shall be fully resolved by binding arbitration. Judgment on the arbitration award may be entered in any court with jurisdiction. All statutes of limitation that otherwise would apply to an action brought in court will apply in arbitration. The arbitrator is authorized to award all remedies permitted by the substantive law that would apply if the action were pending in court, including, without limitation, punitive damages (which shall be governed by the Constitutional standards employed by the courts) and attorneys' fees and costs.

If You or We elect to arbitrate a Dispute, neither You nor We will have the right to pursue that Dispute in court or have a jury resolve that dispute. In addition, if You or We elect to arbitrate a Dispute, (a) neither You nor We may participate in a class action in court or in a class-wide arbitration, either as a plaintiff, defendant or class member; (b) neither You nor We may act as a private attorney general in court or in arbitration; (c) Disputes brought by or against You may not be joined or consolidated with Disputes brought by or against any other person; and (d) the arbitrator shall have no power or authority to conduct a class-wide arbitration, private attorney general arbitration or joined or consolidated arbitration (this sentence including subparts a through d hereof is referred to in this Arbitration Clause as the "Class Action Waiver"). In the event there is an agreement to arbitrate claims or disputes that conflicts with this Arbitration Clause, whether such agreement is executed before, at the same time, or after this Arbitration Clause, the terms of this Arbitration Clause shall control any and all Disputes between You and Us.

Notwithstanding the foregoing, We retain the right to repossess the Vehicle upon Your default and to exercise any power of sale under this Contract. If any provision of this Arbitration Clause other than the Class Action Waiver is invalid or unenforceable under the Federal Arbitration Act or any other applicable law, the invalid or unenforceable provision shall be inapplicable and deemed omitted, but shall not invalidate the rest of this Arbitration Clause, and shall not diminish the parties' obligation to arbitrate Disputes subject to this Arbitration Clause. In the event that the Class Action Waiver is determined to be invalid or unenforceable, then, subject to the right to appeal such a ruling, this entire Arbitration Clause (except for this sentence) shall be null and void.

Whoever first elects arbitration may choose to arbitrate under the rules and procedures of either JAMS or the American Arbitration Association; however in the event of a conflict between these rules and procedures and the provisions of this Arbitration Clause, You and We agree that this Arbitration Clause governs for that specific conflict. You may obtain the rules and procedures, information on fees and costs (including waiver of the fees), and other materials, and may file a claim by contacting the organization of Your choice. The addresses and websites of the organizations are: JAMS, 1920 Main Street, Suite 300, Irvine, CA 92614, www.jamsadr.com; and American Arbitration Association, 335 Madison Avenue, Floor 10, New York, New York 10017-4605, www.adr.org. If neither JAMS nor the American Arbitration Association is able or willing to serve, and You and We can't otherwise agree on a substitute administrator or arbitrator, then a court with appropriate jurisdiction shall appoint an arbitrator. We will consider any good faith request You make to Us to pay the administrator's or arbitrator's filing, administrative, hearing and/ or other fees if You cannot obtain a waiver of such fees from the administrator and We will not seek or accept reimbursement of any such fees. We will bear the expense of our attorneys, experts and witnesses, except where applicable law and this Contract allow Us to recover attorneys' fees and/or court costs in a collection action We bring. You will bear the expense of Your attorneys, experts and witnesses if You prevail in an arbitration. However, in an arbitration You commence, We will pay Your fees if You prevail or if We must bear such fees in order for this Arbitration Clause to be enforced. Also, We will bear any fees if applicable law requires Us to. The arbitrator may decide that an in-person hearing is unnecessary and that he or she can resolve the Dispute based on the papers submitted by You or Us and/or through a telephonic hearing. However, any arbitration hearing that You attend will take place at a location that is reasonably convenient to You. Notice of the time, date and location shall be provided to You and Us under the rules and procedures of the arbitration organization selected.

The arbitrator's decision is final and binding, except for any right of appeal provided by the Federal Arbitration Act, 9 U.S.C. §§ 1 et. Seq. ("FAA"). However, if the amount of the Dispute exceeds $50,000 or involves a request for injunctive or declaratory relief that could foreseeably involve a cost or benefit to either party exceeding $50,000, any party can appeal the award to a three-arbitrator panel administered by the Administrator, which panel shall reconsider any aspect of the initial award requested by the appealing party. The decision of the panel shall be by majority vote. Reference in this Arbitration Clause to "the arbitrator" shall mean the panel of arbitrators if an appeal of the arbitrator's decision has been taken. The costs of such an appeal will be borne in accordance with the section of this Arbitration Clause that describes who will bear the costs for the initial proceeding before a single arbitrator.

It is expressly agreed that this Contract evidences a transaction in interstate commerce. This Arbitration Clause is governed by the FAA and not by any state arbitration law.

MICHIGAN CREDIT ACCEPTANCE CORPORATION (02-2023)
© 2012-2023 Credit Acceptance Corporation.
All Rights Reserved.

PAGE 5 of 5

Sign ➡ Buyer's Initials

Sign ➡ Buyer's Initials

Here is a list of some major defects that may occur in used vehicles.

**Frame & Body**
Frame-cracks, corrective welds, or rusted through
Dog tracks----bent or twisted frame

**Engine**
Oil leakage, excluding normal seepage
Cracked block or head
Belts missing or inoperable
Knocks or misses related to camshaft lifters and push rods
Abnormal exhaust discharge

**Transmission & Drive Shaft**
Improper fluid level or leakage, excluding normal seepage
Cracked or damaged case which is visible
Abnormal noise or vibration caused by faulty transmission or drive shaft
Improper shifting or functioning in any gear
Manual clutch slips or chatters

**Differential**
Improper fluid level or leakage, excluding normal seepage
Cracked or damaged housing which is visible
Abnormal noise or vibration caused by faulty differential

**Cooling System**
Leakage including radiator
Improperly functioning water pump

**Electrical System**
Battery leakage
Improperly functioning alternator, generator, battery, or starter

**Fuel System**
Visible leakage

**Inoperable Accessories**
Gauges or warning devices
Air conditioner
Heater & Defroster

**Brake System**
Failure warning light broken
Pedal not firm under pressure (DOT spec.)
Not enough pedal reserve (DOT spec.)
Does not stop vehicle in straight line (DOT spec.)
Hoses damaged
Drum or rotor too thin (Mfgr Specs)
Lining or pad thickness less than 1/32 inch
Power unit not operating or leaking
Structural or mechanical parts damaged

**Air Bags**

**Steering System**
Too much free play at steering wheel (DOT specs.)
Free play in linkage more than ¼ inch
Steering gear binds or jams
Front wheels aligned improperly
Power unit belts cracked or slipping
Power unit fluid level improper

**Suspension System**
Ball joint seals damaged
Structural parts bent or damaged
Stabilizer bar disconnected
Spring broken
Shock absorber mounting loose
Rubber bushings damaged or missing
Radius rod damaged or missing
Shock absorber leaking or functioning improperly

**Tires**
Tread depth less than 2/32 inch
Sizes mismatched
Visible damage

**Wheels**
Visible cracks, damage or repairs
Mounting bolts loose or missing

**Exhaust System**
Leakage
Catalytic Converter

---

DEALER NAME
**GRAVITY AUTO SALES**
ADDRESS
34335 S. GRAITIOT AVE; CLINTON TOWNSHI, MI 48035
TELEPHONE
586-477-1020
EMAIL
gravityautodocs@gmail.com
FOR COMPLAINTS AFTER SALE, CONTACT:
Add name here: M-1-9

I hereby acknowledge receipt of the Buyers Guide at the closing of this sale.

_Valerie Hollis_                    6-7-24

Signature                          Date

---

**IMPORTANT:** The information on this form is part of any contract to buy this vehicle. Removing this label before consumer purchase (except for purpose of test-driving) violates federal law (16 C.F.R. 455).

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF ILLINOIS

Case No.: _____

Judge: _____

ERIC LEE BOUIE,

Plaintiff,

v.

GRAVITY AUTO, LLC

24717 Gratiot Ave., Eastpointe, MI 48021

And

CREDIT ACCEPTANCE CORPORATION

25505 W. 12 Mile Rd., Southfield, MI 48034

Defendants.

_____/

EXHIBIT E. - VEHICLE HISTORY REPORT

# EXHIBITS E

E: Vehicle History Report



# ZEIGLER
## of SCHAUMBURG
### • FOR A GREAT EXPERIENCE ! •
CHRYSLER DODGE Jeep RAM

208 W. Golf Road
Schaumburg, IL 60195
(847) 882-8400
Wholesale Parts (847) 407-9068
www.zeiglerchryslerdodgejeep.com

**DISCLAIMER OF WARRANTY:** ALL PARTS AND ACCESSORIES ARE SOLD BY THE DEALERSHIP **AS-IS.** ANY WARRANTIES ON THE PARTS OR PRODUCTS DESCRIBED BELOW ARE THOSE OF THE MANUFACTURER OR DISTRIBUTOR OF THE PARTS OR PRODUCTS. THE DEALERSHIP HEREBY EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS AND IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, WITH RESPECT TO THE SAME. THE DEALERSHIP NEITHER ASSUMES NOR AUTHORIZES ANY OTHER PERSON TO ASSUME FOR IT ANY LIABILITY IN CONNECTION WITH THE SALE OF SAID PARTS OR PRODUCTS. CUSTOMER SHALL NOT BE ENTITLED TO RECOVER FROM THE DEALERSHIP ANY CONSEQUENTIAL DAMAGES, DAMAGES TO PROPERTY, DAMAGES FOR LOSS OF USE, LOSS OF TIME, LOSS OF PROFIT OR INCOME, OR ANY OTHER INCIDENTAL DAMAGES. THIS DISCLAIMER IN NO WAY AFFECTS THE PROVISIONS OF ANY MANUFACTURER OR DISTRIBUTOR WARRANTIES.

| DATE ENTERED | YOUR ORDER NO. | DATE SHIPPED | INVOICE DATE | INVOICE NUMBER | |
|---|---|---|---|---|---|
| 22 JUL 24 | | 23 JUL 24 | | QR108059 | |

S O L D   T O:

**RO QUOTE**

ACCOUNT NO. 158191

VALERIE HOLLIS
217 GOING ST
PONTIAC, MI 483423234

S H I P   T O:

PAGE 1 OF 1

| SHIP VIA | SLSM. 30 | B/L NO. | | TERMS | F.O.B. POINT SCHAUMBURG, IL |
|---|---|---|---|---|---|

| QUANTITY ORD. | SHIP | B.O. | PART NO. | | DESCRIPTION | LIST | NET | AMOUNT |
|---|---|---|---|---|---|---|---|---|
| | | | RO Quote for Service Repair Order: 715585 | | | | | |
| | | | Service Advisor: 157   Vehicle: KC734142 | | | | | |
| | | | Part(s) quoted on Line B   General Concern #1 [CS AC BLOW | | | | | |
| 16 | 16 | 0 | SP143877AB | 021A | PLUG | 24.35 | 24.35 | 389.60 |
| 8 | 8 | 0 | 53022143AB | 030D6 | SEAL-INTAK | 15.17 | 10.95 | 87.60 |
| 2 | 2 | 0 | 53022142AB | 021D2 | SEAL-PCV | 35.27 | 25.10 | 50.20 |
| 1 | 1 | 0 | 68224166AB | 194L | MOTOR-BLOW | 348.80 | 320.00 | 320.00 |
| 1 | 1 | 0 | 68156143AA | | WIRING-14 | 164.59 | 151.00 | 151.00 |
| 1 | 1 | 0 | 68144445AA | 025D22 | FUSE-J CAS | 14.54 | 10.50 | 10.50 |
| 1 | 1 | 0 | 68363075AC | 119A | WIRING-FRO | 214.73 | 197.00 | 197.00 |
| | | | | | | | | |
| | | | Parts quoted on RO# 715585 | | | | | |
| | | | **** R O   P A R T S   Q U O T E - DO NOT PAY **** | | | | | |

**NO REFUNDS ON ELECTRICAL OR SPECIAL ORDER PARTS**

**RETURN/REFUND POLICY:** ALL RETURNS MUST BE ACCOMPANIED BY THIS INVOICE AND ARE SUBJECT TO A 25% RESTOCKING CHARGE. RETURNED ITEMS MUST BE IN THE ORIGINAL UNOPENED BOX OR CONTAINER. PLEASE NOTE THAT THE DEALERSHIP WILL **NOT** ACCEPT RETURNS OR MAKE REFUNDS AFTER 10 DAYS.

| MISC SUPPLIES | |
|---|---|
| PARTS | 1,205.90 |
| SUBLET | |
| FREIGHT | 0.00 |
| SALES TAX | 0.00 |

CUSTOMER'S SIGNATURE

X

| TOTAL | |
|---|---|

**CUSTOMER COPY**

# ZEIGLER
## of SCHAUMBURG
### • FOR A GREAT EXPERIENCE ! •
CHRYSLER DODGE Jeep RAM

CUSTOMER #: 158191

715585

*INVOICE*

VALERIE HOLLIS
217 GOING ST
PONTIAC, MI 483423234
HOME:213-462-6421  CONT:213-462-6421
BUS:            CELL:

PAGE 2

208 W. Golf Road
Schaumburg, IL 60195
(847) 882-8400
www.zeiglerchryslerdodgejeep.com

SERVICE ADVISOR: 157 MOISES VILLEGAS

| COLOR | YEAR | MAKE/MODEL | | VIN | LICENSE | MILEAGE IN / OUT | TAG |
|---|---|---|---|---|---|---|---|
| | 19 | DODGE DURANGO | | 1C4SDJCT3KC734142 | | 101985/101986 | T4204 |

| DEL. DATE | PROD. DATE | WARR. EXP. | PROMISED | PO NO. | RATE | PAYMENT | INV. DATE |
|---|---|---|---|---|---|---|---|
| 12JUL24 DD | | | 11:00 20JUL24 | | | CASH | 24JUL24 |

| R.O. OPENED | READY | OPTIONS: | DLR:26783 ENG:5.7_Liter |
|---|---|---|---|
| 10:33 18JUL24 | 16:18 24JUL24 | | |

| LINE | OPCODE | TECH | TYPE | HOURS | | LIST | NET | TOTAL |
|---|---|---|---|---|---|---|---|---|

THANK YOU for selecting Zeigler Chrysler
Dodge Jeep Ram Schaumburg to service your veh
icle. We are dedicated to Providing you a
Truly Exceptional Service Experience. We look
forward to being your Dealer of Choice. Any
questions or comments please contact Service
Director Curt Barnes

WARRANTY DISCLAIMER: ALL PARTS AND ACCESSORIES ARE SOLD AND ALL REPAIRS ARE PROVIDED BY THE DEALERSHIP AS-IS. THE DEALERSHIP HEREBY EXPRESSLY DISCLAIMS ALL WARRANTIES, EXPRESS AND IMPLIED, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, AND NEITHER ASSUMES NOR AUTHORIZES ANY OTHER PERSON TO ASSUME FOR IT ANY LIABILITY IN CONNECTION WITH THE SALE OF ANY PARTS OR ACCESSORIES OR ANY REPAIRS PERFORMED TO THE VEHICLE. THE ONLY WARRANTIES ON PARTS AND ACCESSORIES OR REPAIRS ARE THOSE WHICH MAY BE OFFERED BY THE MANUFACTURER OR THE ORIGINAL PARTS DISTRIBUTOR AND ONLY SUCH MANUFACTURER OR DISTRIBUTOR SHALL BE LIABLE FOR PERFORMANCE UNDER SUCH WARRANTIES. CUSTOMER SHALL NOT BE ENTITLED TO RECOVER FROM THE DEALERSHIP ANY CONSEQUENTIAL DAMAGES, DAMAGES TO PROPERTY, DAMAGES FOR LOSS OF USE, LOSS OF TIME, LOSS OF PROFIT OR INCOME, OR ANY OTHER INCIDENTAL DAMAGES.

| Original Estimate | Total Additional Cost | Approved By/Telephone | Date & Time |
|---|---|---|---|
| $ | $ | | |
| Revised Estimate | | | |
| $ | | | |

By signing below, you acknowledge that you were notified of and authorized the Dealership to perform the services/repairs itemized in this Invoice and that you received (or had the opportunity to inspect) any replaced parts as requested by you. The vehicle is being returned to you in exchange for your payment of the Amount Due.

DATE          CUSTOMER SIGNATURE          AUTHORIZED DEALERSHIP REPRESENTATIVE SIGNATURE

*SHOP SUPPLY COSTS:
We have added a charge
equal to 10% of the
total cost of labor and
parts not to exceed
$75.00, to the Repair
Order for shop supplies
used in connection with
this repair.

**ALL PARTS ARE NEW
UNLESS OTHERWISE
INDICATED.**

| DESCRIPTION | TOTALS |
|---|---|
| LABOR AMOUNT | 440.00 |
| PARTS AMOUNT | 330.50 |
| GAS, OIL, LUBE | 0.00 |
| SUBLET AMOUNT | 0.00 |
| MISC. CHARGES * | 0.00 |
| TOTAL CHARGES | 770.50 |
| LESS DISCOUNTS | 0.00 |
| SALES TAX | 33.05 |
| PLEASE PAY THIS AMOUNT | 803.55 |

Dealer Code: 26783

DealerCAP 2021 CDK Global, LLC  (05/21) SERVICE INVOICE TYPE 2 - 2S/2C - "AS-IS" - IL - 9698012

**CUSTOMER COPY**



**Service & Parts**
STICK WITH THE SPECIALISTS'

**Zeigler Chrysler Dodge Jeep Ram Schaumburg**
208 W Golf Rd, Schaumburg, IL 60195
847-882-8400 | zcdjservicebdc.26783@dealernotification.com

# MULTI-POINT INSPECTION

| | | | |
|---|---|---|---|
| VALERIE HOLLIS | 715585 | 213-462-6421 | 2019 Durango (5.7L) 8cyl, Automatic, 4wd |
| Customer Name | R.O. Number | Phone | Vehicle Year/Model |
| 1C4SDJCT3KC734142 | 101985 mi | 7/22/2024 | Moises Villegas | Gary Gliszczynski |
| VIN Number | Mileage | Date | Service Advisor | Service Technician |

- 🟢 Checked and OK
- 🟡 Will need future attention
- 🔴 Requires immediate attention
- ⚪ Not applicable
- 🔵 Filled

✔ VEHICLE CHECKUP          ✔ VEHICLE CHECKUP PLUS



Notes

# NICK'S GARAGE, INC.

ERIC

(313)870-7199 (630)  -

25 W. Irving Park Rd
Roselle, IL 60172
(630)269-0800

| | |
|---|---|
| Year Make. | 2019 Dodge Durango R/T |
| Engine | V8 5.7L Vin: T GAS FI AWD  8 |
| License | EWE9538 |
| MLG in/out | 121556 / 121556 |
| Vin | 1C4SDJCT3KC734142 |

| Date 12/11/24 | Schedule 12/10/24 | *INVOICE : 12533* | 09:17 am | Page 1 |
|---|---|---|---|---|

| REMARKS AND LABOR DESCRIPTIONS | HRS | PRICE | PARTS & LUBRICANTS | QTY | PRICE | TOTAL |
|---|---|---|---|---|---|---|
| Remove & Install: RADIATOR ASSEMBLY | 3.00 | 387.00 | RADIATOR ASSEMBLY | 1.00 | 300.00 | 300.00 |
| | | | ANTIFREEZE | 2.00 | 14.00 | 28.00 |
| | | | *3 year Warranty* | | | |
| | | | *PAID CASH $700.00* | | | |

| DATE | TIME | PHONE | APPROVED | AMOUNT | All Parts Are New Unless Shown As (U) Used or (R) Rebuilt | | Parts & Lubricants | | 328.00 |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | Labor | 387.00 | | | |
| | | | | | Sublet | 0.00 | | | |

| | | | |
|---|---|---|---|
| I acknowledge notice and oral approval of an increase in the original estimated price | This vehicle will be reassembled within3 days of the date shown above if I donot authorize the recommended services. | EPA | 0.00 |
| | | SHOP | 0.00 |
| | | Gasoline | 0.00 |
| CASH / CASH | | Sub Total | 715.00 |
| | | Sales Tax | 23.78 |
| | | Deposit | 0.00 |
| | | Disc. Applied | 0.00 |

**X** ..................................................
**A C C E P T A N C E   S I G N A T U R E**
**I accept the charges and terms of this agreement.**

*720.00*

| | |
|---|---|
| TOTAL | ~~738.78~~ |
| BALANCE DUE | 0.00 |

I authorize the above repairs and necessary materials.  Your employees may operate vehicle for inspection, testing, delivery at my risk.  You will not be responsible for loss or damage to vehicle or items left in it.  I agree to pay reasonable storage on vehicle left more that 3 working days after notification that job is completed. Labor is guaranteed 90 days or 4000 miles whichever occurs  first.  All other guarantees are made by the manufacturer. Warrantee work based on this bill must be performed at this shop.  All  parts are new unless specified as (U) used or (R) rebuilt.  REMOVED PARTS WILL BE DISPOSED OF UNLESS I INITIAL HERE_____.

10:19

.ıl 5G 🔋

No Problems Reported

[ 📄 Download as PDF($1) ]  [ 🖨 Print my report($1) ]

## ℚ Market Price Analysis



### Optimal Price Analysis

The ViNchain market price analysis is based on a vehicle's history such as vehicle class and age, number of owners accident and damage history, title brands, odometer readings, etc. This information is used to compare the vehicle's favorability against the entire market of vehicles with similar specifications.

**Market Value for 2019 Dodge Durango RT**

Market Average
$28,099

Below Market
$24,408 or less

Above Market
$31,790 or more

Estimates based on **838 similar vehicles sold** between Jul 02, 2024 - Dec 28, 2024

**ASSUMPTIONS**
Current Mileage: 76,064 miles
Time Period: Past 6 months

**ESTIMATES**
Market Value: $24,408 - $31,790
Estimate Certainty: 99%

## 🗐 Ownership Cost



**Ownership Cost for 2019 Dodge Durango RT**
Estimated: $46,480 over the next 5 years

Total:
$46,480

- ■ Depreciation ($9,869)
- ■ Insurance ($10,956)
- ■ Fuel ($11,621)
- ■ Maintenance ($8,671)
- ■ Repairs ($5,205)
- ■ Taxes & Fees ($160)

**Graph** | Table

**ASSUMPTIONS**
Vehicle: 2019 Dodge Durango RT
Mileage: 75,000 mi + 0    mi/year

**ESTIMATES**
5-Year Mileage: 75,000 mi
Cost Per Mile: $0.62

## 🚘 ACCIDENT / SALVAGE / INSURANCE RECORDS CONFIRMED

No Problems Reported



## 🚘 DAMAGE CHECK CONFIRMED

🔒 vinhistoryusa.com

*Vehicle Vin Report*
*2019 Dodge Durango*

10:20

5G

| Event Date | Location | Odometer | Data Source | Details |
|---|---|---|---|---|
| 11/17/2023 | ONLINE | 98,804 | Dealer | Vehicle Listed for |
| 11/22/2023 | TULSA, OK | 98,809 † | Dealer Record | Vehicle in Dealer Inventory |
| 12/11/2023 | GLENPOOL, OK | 98,804 | Motor Vehicle Dept. | Title(Leased Vehicle) |

**2024**

Owner 2

| Location: MI | Owned From: 06/2024 | Usage: Personal |
|---|---|---|

| Event Date | Location | Odometer | Data Source | Details |
|---|---|---|---|---|
| 06/14/2024 | PONTIAC, MI | 98,846 | Motor Vehicle Dept. | Title(Lien Reported) |
| 06/14/2024 | PONTIAC, MI | | Motor Vehicle Dept. | Registration Event/Renewal |
| 07/18/2024 | SCHAUMBURG, IL | 101,985 | Dealer Service | Heat or Air Conditioning Serviced Multiple Point Vehicle Inspection Recommended Maintenance Performed |
| 12/06/2024 | SCHAUMBURG, IL | 121,556 | Dealer Service | Multiple Point Vehicle Inspection Promotional Service Performed |

† This odometer reading was not used in this calculation because the difference was too small or it is in kilometer. When a reading difference is small, it is due to either a data entry error of the date of the odometer or a rounding of the odometer and not likely due to a true rollback.

## 🔧 ROUTINE MAINTENANCE

Regular maintenance is key to ensuring your vehicle's optimal performance and longevity. Our interval-based service schedule helps you keep track of essential maintenance tasks that should be performed based on mileage or time intervals, whichever comes first. By adhering to this schedule, you can prevent potential issues, improve fuel efficiency, and extend the life of your vehicle.

| Description | Mileage |
|---|---|



🔒 vinhistoryusa.com

10:20

5G

[ Download as PDF($1) ]  [ Print my report($1) ]

## DETAILED VEHICLE HISTORY

**2019**  Owner 1

| | | |
|---|---|---|
| **Locatio n:** OK | **Owned From:** 05/2019 | **Usage:** Fleet, Rental, Lease |

| Event Date | Location | Odometer | Data Source | Details |
|---|---|---|---|---|
| 05/13/2019 | PA | 10 | Motor Vehicle Dept. | Title Registration Event/Renewal Titled or Registered as a Rental Vehicle, or Part of a Rental Fleet |
| 09/16/2019 | SYCAMORE, OH | | State Agency | Front Impact with Another Vehicle(Case #:20194231758) Moderate Damage Reported |
| 10/18/2019 | OH | 13,680 | Auto Auction | Reported at Auto Auction |
| 10/28/2019 | OH | 13,680 | Auto Auction | Auction Announced as Fleet/Lease(COLOR REPORTED AS RED) |
| 04/28/2020 | MI | 13,687 | Auto Auction | Reported at Auto Auction |
| 05/08/2020 | SAND SPRINGS, OK | 13,687 | Motor Vehicle Dept. | Title |
| 06/05/2020 | SAND SPRINGS, OK | 13,689 | Dealer Record | Vehicle in Dealer Inventory |
| 11/17/2023 | ONLINE DEALER | 98,804 | Dealer Listing | Vehicle Listed for Sale |
| 11/22/2023 | TULSA, OK | 98,809 ↑ | Dealer Record | Vehicle in Dealer Inventory |
| 12/11/2023 | GLENPOOL, OK | 98,804 | Motor Vehicle Dept. | Title(Leased Vehicle) |

**2024**  Owner 2

| | | |
|---|---|---|
| **Locatio n:** MI | **Owned From:** 06/2024 | **Usage:** Personal |

| Event Date | Location | Odometer | Data Source | Details |
|---|---|---|---|---|
| 06/14/2024 | PONTIAC, MI | 98,846 | Motor Vehicle Dept. | Title(Lien Reported) |
| 06/14/2024 | PONTIAC, MI | | Motor Vehicle Dept. | Registration Event/Renewal |



🔒 vinhistoryusa.com

**10:18** 5G

[ Download as PDF($1) ]  [ Print my report($1) ]

## 🛡 Open Safety Recall Check

| April 2, 2020 20v191000 | Back Over Prevention: Sensing System: Camera |
| --- | --- |
| | Chrysler (Fca US Llc) IS Recalling Certain 2020 Jeep Gladiator and Jeep Cherokee, 2019-2020 RAM 1500 Pickup, RAM 2500 Pickup, RAM 3500 Pickup, Chrysler Pacifica, Dodge Durango, Jeep Grand Cherokee, Jeep Wrangler, and Jeep Renegade and 2019 Dodge Challenger Vehicles Equipped With 8.4" or 12" Radio Displays. A Software Error CAN Cause THE Rearview Camera Image TO Remain Displayed After THE Vehicle HAS Been Shifted OUT OF Reverse. AS Such, These Vehicles Fail TO Comply With THE Requirements Of Federal Motor Vehicle Safety Standard (Fmvss) Number 111, "rearview Mirrors." |
| March 26, 2020 20v183000 | Power Train:driveline:differential Unit |
| | Chrysler (Fca US Llc) IS Recalling Certain 2019 Jeep Grand Cherokee and Dodge Durango Vehicles. THE Front Differential MAY Have Been Assembled With Pinion Gears That ARE Insufficiently Hardened, Which CAN Lead TO THE Gear Teeth Wearing Down. IF Both Pinion Gears Have Their Teeth Sufficiently Worn Off, Torque Power CAN NOT BE Transferred From THE Front Wheels TO THE Driveline, Resulting IN Loss OF Power While Driving and Loss OF THE Park Function When Stationary. |
| June 9, 2022 22v426000 | Service Brakes, Hydraulic:antilock/Traction Control/Electronic Limited Slip:control Unit/module |
| | Chrysler (Fca US, Llc) IS Recalling Certain 2018-2019 Jeep Grand Cherokee and Dodge Durango Vehicles. A Malfunction IN THE Antilock-Brake System (Abs) Module MAY Illuminate THE Brake Lights, and Allow THE Vehicle TO Start and Shift OUT OF Park Without THE Brake Pedal Being Applied. |
| November 7, 2024 24v838000 | Service Brakes, Hydraulic:antilock/Traction Control/Electronic Limited Slip:control Unit/module |
| | Chrysler (Fca US, Llc) IS Recalling Certain 2018-2019 Jeep Grand Cherokee and Dodge Durango Vehicles. A Malfunction IN THE Antilock-Brake System (Abs) Module MAY Incorrectly Illuminate THE Brake Lights and Disable THE ABS and Electronic Stability Control (esc). IN Addition, THE Vehicle Operator MAY BE Able TO Start and Shift OUT OF Park Without THE Brake Pedal Being Applied. |

## 🛡 Warranties

| Basic | Corrosion | Drivetrain |
| --- | --- | --- |
| 36 | 60 | 60 |
| 36,000 | unlimited | 60,000 |
| Inactive | Inactive | Inactive |

**Roadside Assistance**
60
60,000
Inactive

[ Renew Warranty ]

🔘 1

## 🏁 ODOMETER CHECK CONFIRMED

🔒 vinhistoryusa.com

━━━━━━━━━━

# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

Case No.: _____

Judge: _____

ERIC LEE BOUIE,

Plaintiff,

v.

GRAVITY AUTO, LLC

24717 Gratiot Ave., Eastpointe, MI 48021


And

CREDIT ACCEPTANCE CORPORATION

25505 W. 12 Mile Rd., Southfield, MI 48034

Defendants.

_____/


EXHIBIT C. - DOWN PAYMENT PROOF

# EXHIBITS C

C: Down Payment Proof ($2,000)

View full complaint ⊕

✓ **Sent to company**

**STATUS**

Sent to company on 7/23/2024

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

✓ **Company responded**

| **STATUS** | **RESPONSE TYPE** |
| --- | --- |
| Company responded on 8/7/2024 | Closed with explanation |

## Company's Response

Thank you for your feedback. Julia, our Senior Compliance Analyst, tried to call you to discuss your concerns in more detail, but you disconnected the call. I understand that you have questions about the terms in your Retail Installment Contract. I am happy to help. I've attached a copy of your contract, which shows that you and Valerie Hollis bought a 2019 Dodge Durango from Gravity Auto Sales on June 7, 2024. On Page 1, you'll find the truth-in-lending disclosures, including the 16.99% APR, $23,282.78 finance charge, $38,693.38 amount financed, $61,976.16 total of payments, $2,000 down payment, and $63,976.16 total sale price. Please recall that you made the down payment directly to the dealership, and Credit Acceptance didn't receive any portion of it. You'll also see that liability insurance coverage isn't included—instead, it's your responsibility to insure the Durango. Your initials appear in the bottom righthand corner of the page. My investigation suggests you were aware of and received all the financing disclosures on the day of the sale. Indeed, you signed the attached Credit Acceptance Corporation

# Michigan Department of State Application for Title and Registration Statement of Vehicle Sale

| | | |
|---|---|---|
| Purchase Date **06/07/2024** | Stock Number **2058** | Delivery Date **06/07/2024** |

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Dealer: **GRAVITY AUTO SALES** | | Plate Number | Plate Expiration Date: | | | Months | ☐ Title Only<br>☒ New Plate<br>☐ Renewal<br>☐ Transfer |
| Street Address: **34335 S. GRAITIOT AVE** | | | Month | Day | Year | | |
| City: **CLINTON TOWNSHI** | | Year<br>**2019** | Make<br>**DODGE** | | Body Style<br>**SUV** | | County of Residence<br>**OAKLAND** |
| County: **MACOMB** | State: **MI** ZIP Code: **48035** | Vehicle Identification Number<br>**1C4SDJCT3KC734142** | | Base MSRP or Empty Weight | | | License Plate Fee<br>**210.00** |
| Dealer License Number<br>**b209389** | Sales Tax License Number<br>**83-3415379** | Phone Number<br>**586-477-1020** | Driver License, PID, or FEIN Number of All Owners or Lessees<br>1) **H420839585268**  2) **B000234497391**<br>3) | | | | Plate Transfer Fee<br>**N/A** |

| Vehicle Sold: ☐ New  ☒ Used  ☐ Demo | Trade-In ☐ Yes  ☒ No | Complete Names and Address of All Owners or Lessor | Title Fee<br>**16.00** |
|---|---|---|---|
| Trade-In Year | Trade-In Make | Vehicle Identification Number (VIN) | **VALERIE HOLLIS**<br>**ERIC BOUIE**<br>**655 RIVERSIDE ST**<br>**PONTIAC, MI 48342** | Title Late Fee: $50 ($100 for B dealer floor planned vehicles) |

| **Vehicle Registration to Transfer Plate**<br>*Expires 30 Days After Delivery Date* | | | Sales Tax<br>**2,092.38** |
|---|---|---|---|
| Plate Transferred From:  Year | Make | | Total – Transfer to Line 5<br>**2,318.38** |
| Vehicle Identification Number (VIN): | Plate Number: | Complete Names and Address of All Lessees | Full Rights to Survivor<br>☐ Yes  ☐ No |

| **Vehicle History and Title Brand Disclosure** | | |
|---|---|---|
| ☐ Police Vehicle | ☐ Vehicle Has Been Flood Damaged | Michigan No-Fault Insurance Company<br>**allstate** | Policy or Binder Number<br>**962433109** |
| ☐ Municipal Vehicle | ☐ Salvage Title Was Previously Issued | | |
| ☐ Taxi | | Secured Interest:<br>**credit acceptance**<br>Street Address<br>**25505 w. 12mile**<br>City, State, ZIP: **SOUTHFIELD, MI 48034** | Lien Filing Date:<br>**6/07/24**<br>Lien Code ID:<br>**LH055996** |

**Odometer Mileage Disclosure**
*The odometer mileage reading must match the mileage reading disclosed to the purchaser on the title or mileage statement.*

| 9 | 8 | 8 | 4 | 6 | No Tenths | ☒ Actual Mileage ☐ Exempt<br>☐ Not Actual Mileage |
|---|---|---|---|---|---|---|

| | I have selected and agree to pay the OPTIONAL $24 electronic filing fee | |
|---|---|---|
| Remarks: | | Customer Initials |

**AS IS NO WARRANTY/REPAIRS**
**NO REFUNDS/RETURNS**
**CAC LIEN HOLDER**
**NEW PLATE**

| | |
|---|---|
| 1. Purchase Price of Vehicle (Including Freight & Accessories) | 34,643.00 |
| 2. Other Taxable Charges (Documentary, Service, Temp. Reg. Fees, etc.) | 230.00 |
| 2a. Optional Electronic $24 Filing Fee | N/A |
| 3. Trade-In Sales Tax Credit | 0.00 |
| 4. Total Taxable Price (Line 1 + Line 2 + Line 2a – Line 3) | 34,873.00 |
| 5. Sales Tax + Plate Fee + Title Fee (From Total Above) | 2,318.38 |
| 6. Non-Taxable Charges (Labor, Service Contract, etc.) | 2,002.00 |
| 7. Total Delivered Price (Line 1 + Line 2 + Line 2a + Line 5 + Line 6) | 39,193.38 |
| 8. Cash on Deposit | N/A |
| 9. Cash Due on Delivery | 2,000.00 |
| 10. Trade-In | $ N/A |
| 11. Minus Lien | $ N/A |
| 12. Total Down Payment | 2,000.00 |
| 13. Unpaid Balance To Be Financed | 37,193.38 |
| 14. Insurance/Additional Product Charge* | 1,500.00 |
| 15. Total Amount of Finance Contract (Line 13 + Line 14) | 38,693.38 |

**Used Vehicle Dealers Only**
Floor Planned Inventory Lender:

Recreation Passport?  ☐ Yes  ☐ No   Purchaser or Lessee's Initials:

I certify this vehicle was delivered to the named purchaser or lessee on the delivery date indicated above, all information on this form is accurate and the vehicle is subject only to the secured interest listed on this form. I certify the dealership will apply for title and registration in the purchaser's name within 21 days of the delivery date, and that I have provided paper or electronic copies of all signed documents to the purchaser.

X *(signature)*
Signature of Dealer's Agent

**Zach Cronk**
Printed Name of Dealer's Agent

X *(signature)* Agent
Title

*Warning: This insurance is not PL/PD No-Fault Insurance required by Michigan law.*

☐ Credit Life Insurance          ☐ Health & Accident Insurance
☒ Gap or Waiver

BFS-4 Temporary Registration Number (this number may be handwritten)
C **C8274347**

Printed Name of Salesperson
**Zach Cronk**

**Purchaser Warning: Do Not Sign a Blank Form**

I am purchasing or leasing this vehicle and am applying for a Michigan certificate of title and registration or, if the lessee, applying for a registration. I certify that my driver's license is not suspended, revoked, or denied as a repeat offender and I am eligible to purchase or register this vehicle. I further certify that if a tax exemption is shown above it is valid.

x *Valerie Hollis*      6/7/24      x _____
Purchaser or Lessor's Signature   Date   Co-Purchaser's Signature   6/7/24   Co-Purchaser's Signature   Date

Lessee's Signature   Date   Co-Lessee's Signature   Date   Co-Lessee's Signature   Date

**NOTE TO PURCHASERS:** If you do not receive your title within 45 days, contact the Department of State Information Center at 888-767-6424.

Authority granted by P.A. 300 of 1949, as amended. **Form must be typed only. See Dealer Manual for permitted handwritten corrections.**

RD-108 (Rev. 01/23)

# UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF ILLINOIS

Case No.: _____

Judge: _____

ERIC LEE BOUIE,

Plaintiff,

v.

GRAVITY AUTO, LLC

24717 Gratiot Ave., Eastpointe, MI 48021


And

CREDIT ACCEPTANCE CORPORATION

25505 W. 12 Mile Rd., Southfield, MI 48034

Defendants.

_____/


EXHIBIT B. - GAP ADDENDUM

# EXHIBITS B

B: GAP Addendum ($242 → $1,500)

AGM01879856

GAP Complete 150% (04/22)

# GAP ADDENDUM

**CUSTOMER (BORROWER) INFORMATION**

LAST NAME HOLLIS                                    FIRST NAME VALERIE                          MIDDLE INITIAL

STREET ADDRESS 655 RIVERSIDE ST                                                        APT #

CITY PONTIAC                                              STATE MI                    ZIP CODE 48342

HOME PHONE # (248) 710-6797          BUS. PHONE #                        EMAIL

**PROTECTED VEHICLE INFORMATION**

MANUFACTURER DODGE                      MODEL DURANGO R/T        APR % 16.99        YEAR 2019

VEHICLE ID NUMBER 1C4SDJCT3KC734142                                                □ COMMERCIAL USAGE

ONE TIME CHARGE TO CUSTOMER FOR GAP ADDENDUM $242.00            EFFECTIVE DATE OF ADDENDUM 06/07/2024

INSTALLMENT SALES                      MSRP/J.D. Power ON DATE OF PURCHASE $46,345.00 Mileage: 98,846

CONTRACT/LOAN  ☑    LEASE □    AMOUNT FINANCED $38,693.38 TERM (IN MONTHS) 72     NEW □     USED □

**DEALER (CREDITOR) INFORMATION** Maximum Eligibility Limit **150%** MSRP/NADA Maximum Term of GAP **84** Months Maximum GAP Benefit **$50,000**

DEALER # A11300              DEALERSHIP Gravity Auto Sales

STREET ADDRESS 34335 S Gratiot Ave,

CITY Clinton Twp                                    STATE MI          ZIP CODE 48035

**ASSIGNEE INFORMATION**

ASSIGNEE Credit Acceptance Corp (B)            INSTALLMENT SALES CONTRACT / LOAN / ACCT. #

STREET ADDRESS P.O. Box 513

CITY Southfield                                      STATE MI          ZIP CODE 48037

Max. Limit of Liability: $50,000                  Max. Primary carrier Deductible: $1,000    Max. Financing contract Term: 84 Mos.
Max. % of Vehicle Value At Loan/Lease: **150%**    Max. Financing contract Amount: $125,000

This GAP Addendum, which is effective as of the Effective Date above, amends the FINANCING CONTRACT. This GAP Addendum is between the CUSTOMER shown above (YOU or YOUR) and the DEALER/CREDITOR shown above (WE, US, or OUR) or if the FINANCING CONTRACT is assigned to another party, the ASSIGNEE. YOU may wish to consult an alternative source to determine whether similar protection may be obtained and at what cost. If YOU purchase GAP from this source, YOU understand that the DEALER may retain all or a portion of the charge for this GAP Addendum. YOU should carefully read the back of this GAP Addendum for additional information on eligibility, requirements, conditions and exclusions that could prevent YOU from receiving benefits under this GAP Addendum.

BY YOUR SIGNATURE BELOW YOU ACKNOWLEDGE AND AGREE TO THE FOLLOWING:
- THAT THIS GAP ADDENDUM IS NOT AN INSURANCE POLICY OR PART OF AN INSURANCE POLICY.
- THAT YOUR ACCEPTANCE OF THIS GAP ADDENDUM IS VOLUNTARY AND IS NOT REQUIRED IN ORDER FOR YOU TO OBTAIN CREDIT, DOES NOT IMPACT YOUR ABILITY TO OBTAIN ANY PARTICULAR OR MORE FAVORABLE CREDIT TERMS AND HAS NO EFFECT ON THE TERMS OF THE RELATED SALE OF THE PROTECTED VEHICLE.
- THAT YOU HAVE READ AND UNDERSTAND THIS GAP ADDENDUM AND ITS PROVISIONS AND AGREE THAT NO VERBAL REPRESENTATIONS HAVE BEEN MADE TO YOU THAT DIFFER FROM THESE WRITTEN PROVISIONS.
- YOU AUTHORIZE RELEASE OF FINANCING CONTRACT INFORMATION REQUIRED FOR PROCESSING OF A LOSS.
- LOSSES MUST BE REPORTED AND REQUIRED DOCUMENTATION MUST BE PROVIDED TO THE BELOW GAP ADMINISTRATOR WITHIN NINETY (90) DAYS OF THE PRIMARY CARRIER'S SETTLEMENT OR, IF THERE IS NO PRIMARY CARRIER, WITHIN NINETY (90) DAYS OF THE DATE OF LOSS.

Initial Here:

**Washington Residents:** Any refund of the purchase price for a GAP Addendum that was included in the financing of the PROTECTED VEHICLE may be applied by the ASSIGNEE as a reduction of the overall amount owed under the FINANCING CONTRACT, rather than applying the refund strictly to the purchase price of the GAP Addendum.

**Yes, I elect the GAP Protection and acknowledge understanding of all provisions above and on succeeding pages.**

Customer Signature 1: _Valerie Hollis_                              Date: 06/07/2024

Customer Signature 2:                                               Date: 06/07/2024

Dealer Signature:                                                   Date: 06/07/2024

DISTRIBUTION: CUSTOMER - CLASSIC - DEALER - ASSIGNEE

Administered by Norman and Company, Inc. 13401 McCormick Drive, Tampa, FL 33626/ 800-930-4633/ www.classictrak.com

GAP Complete 150% (04/22)

1 of 9

**GAP does not take the place of insurance on the PROTECTED VEHICLE. YOU are responsible for maintaining collision and comprehensive insurance for the full value of the PROTECTED VEHICLE and any other insurance required by the FINANCING CONTRACT or applicable law. YOU are responsible for all notifications or claims that are required to be filed with YOUR automotive insurance company. WE will not process or handle YOUR insurance claims for YOU. If YOU move during the term of this GAP Addendum, it is YOUR responsibility to notify US or OUR Administrator of YOUR change of address.**

In the event of a **CONSTRUCTIVE TOTAL LOSS** or **UNRECOVERED THEFT** to the **PROTECTED VEHICLE**, **WE** agree to waive **OUR** rights against **YOU** for an amount subject to the **LIMITS OF LIABILITY** and the terms, **CONDITIONS** and **EXCLUSIONS** hereof. **YOU will remain responsible for payment of any items stated under EXCLUSIONS and that remain unpaid in the FINANCING CONTRACT.**

---

**LIMITS OF LIABILITY–THIS IS A PARTIAL LIST. YOU MUST READ THIS ENTIRE GAP ADDENDUM FOR ALL LIMITATIONS:**

A.  **WE** will not waive that portion of the **NET PAYOFF** that results from the original **FINANCING CONTRACT** amount exceeding the Max. % of Vehicle Value at Loan stated on the front of this GAP Addendum at the inception date of this GAP Addendum. Any amounts in excess of the Max % of Vehicle Value at Loan/Lease will be deducted from any amount waived.

B.  The GAP term must match the **FINANCE CONTRACT** term not to exceed the Maximum Finance Contract term stated on Page 1.

C.  Any GAP Addendum issued for an amount financed in excess of A. above will be deemed eligible for enrollment as limited by this section.

D.  **FINANCING CONTRACTS** that do not have uniform monthly repayment terms for the full period of the **FINANCING CONTRACT** are subject to the provisions of **CONDITION** B.

E.  The GAP Addendum may not waive the entire **NET PAYOFF** due to **LIMITS OF LIABILITY**, **CONDITIONS** and **EXCLUSIONS** herein.

---

**YOUR RIGHT TO CANCEL:** **YOU** may cancel this GAP Addendum for any reason or no reason, or in the event of early termination of the GAP Addendum, before midnight of the 30th day after the Effective Date shown above **YOU** will receive a full refund/credit provided no **CONSTRUCTIVE TOTAL LOSS** has occurred. In the event of cancellation or early termination of the GAP Addendum after the 30th day, any refund will be calculated on the basis of a Pro Rata refund method, less a $50.00 cancellation fee, unless other state regulatory methods apply. In the event of a **CONSTRUCTIVE TOTAL LOSS**, the **ADDENDUM** will be fully earned and no refund will be due. **WE** will apply all refund proceeds to any remaining balance **It is YOUR responsibility to notify the DEALER/CREDITOR, in writing within ninety (90) days of YOUR request to cancel this GAP Addendum and request a refund/credit of the GAP charges. If YOU do not receive the refund/credit within sixty (60) days of notice of cancellation/ termination, contact the GAP Administrator shown on page 1.**

**TERMINATION OF ADDENDUM**: This GAP Addendum will terminate on the date the **FINANCE CONTRACT** is scheduled to terminate and no refund will be due. This GAP Addendum will terminate in the event of a **CONSTRUCTIVE TOTAL LOSS** or **UNRECOVERED THEFT** and no refund will be due. This addendum will terminate and a refund may be due if any of the following events occur: 1. The **FINANCING CONTRACT** is terminated prior to its maturity date; 2. In the event that a **PROTECTED VEHICLE** is sold, assigned or transferred by **YOU** before the expiration date of the **FINANCING CONTRACT**; 3. Expiration of any redemption period following the repossession or surrender of the **PROTECTED VEHICLE**; or 4. The date the **FINANCING CONTRACT** is prepaid or the **FINANCING CONTRACT** is refinanced. **It is YOUR responsibility to notify the DEALER/CREDITOR in writing, within 90 days of a terminating event, unless prohibited by law, of YOUR request to cancel this coverage and to request a refund/credit of the GAP charges. If YOU do not receive the refund/credit within sixty (60) days of notice of cancellation/termination, contact the GAP Administrator shown on Page 1.**

### DEFINITIONS

A.  **ACTUAL CASH VALUE AT LOSS (ACV):** The retail value of the **PROTECTED VEHICLE**, on the **DATE OF LOSS**, as listed in the national or regional guide, such as J.D Power Official Used Car Guide or, at the GAP Administrator's discretion, the GAP Administrator may use an equivalent national or regional guide for the territory in which the **PROTECTED VEHICLE** is principally garaged. For a **PROTECTED VEHICLE** which is not covered by a **PRIMARY CARRIER**, the **PRIMARY CARRIER** has been declared insolvent, the **PRIMARY CARRIER** policy has a stated value or limit of liability that is less than the value of the **PROTECTED VEHICLE**, has no retail value available, or is located in territories where J.D. Power Official Used Car Guide or equivalent national regional guide is not customarily used, **ACV** will be determined using the best information available to our GAP administrator as the basis for establishing **ACV** for **PROTECTED VEHICLE** in the territory of the **PROTECTED VEHICLE**.

B.  **COMMERCIAL USAGE** (as selected on the front of this GAP Addendum): A **PROTECTED VEHICLE** utilized for any commercial purpose is excluded unless the **COMMERCIAL USAGE** option has been purchased. A vehicle registered as commercial or registered to a business shall be deemed as utilized for commercial purposes. Vehicle used for police or emergency service, principally off-road use, snow removal, rental purposes, road repair or hauling activities are not eligible for coverage hereunder. Share the expense car pools are not considered commercial purpose.

C.  **CONSTRUCTIVE TOTAL LOSS:** A loss where PRIMARY CARRIER determines the cost to repair or replace the **PROTECTED VEHICLE** plus its salvage value would exceed the **ACTUAL CASH VALUE AT LOSS**. In the event there is no **PRIMARY CARRIER**, **YOU** must provide, or make the **PROTECTED VEHICLE** available to the Administrator, to inspect or appraise to determine if the cost to repair or replace the **PROTECTED VEHICLE** plus its salvage value would exceed the **ACTUAL CASH VALUE AT LOSS**.

D.  **DATE OF LOSS:** The date on which the actual physical damage or **UNRECOVERED THEFT** occurs. If such date is indeterminable, the **DATE OF LOSS** shall be the date shall be one of the following occurs: 1) The date **YOU** discover a loss and report the **CONSTRUCTIVE TOTAL LOSS** to **YOUR PRIMARY CARRIER**; 2) The date **YOU** report the theft of **YOUR PROTECTED VEHICLE** to the police; OR 3) In the event there is no **PRIMARY CARRIER**, the date that the **PROTECTED VEHICLE** is inspected or appraised.

E.  **DELINQUENT PAYMENT(S):** Any payment, as described in the **FINANCING CONTRACT**, which remains unpaid for a period of

GAP Complete 150% (04/22)

more than ten (10) days after the date stated in the **FINANCING CONTRACT**. **DELINQUENT PAYMENTS** will also include any late charges or interest that have accrued due to past due **FINANCING CONTRACT** payments.

F. **FINANCING CONTRACT/LOAN:** The contract which represents the financing agreement between **YOU** and **US** for the purchase of the **PROTECTED VEHICLE**, and which sets forth the terms, **CONDITIONS**, inception date and expiration date of the financing agreement.

G. **GAP WAIVER BENEFIT:** The difference between the **NET PAYOFF** and the **PRIMARY CARRIER** insurance settlement for the **PROTECTED VEHICLE** on the **DATE OF LOSS**. **GAP WAIVER BENEFIT** includes the amount of the **CUSTOMER'S** physical damage deductible on the **PRIMARY CARRIER** policy up to the maximum deductible coverage of one thousand dollars ($1,000). Deductible amounts are covered as part of the **GAP WAIVER BENEFIT** and will not be paid or reimbursed directly to the **CUSTOMER**. In the event that there is not a **PRIMARY CARRIER** in effect on the **DATE OF LOSS**, or the **PRIMARY CARRIER** is declared insolvent, **WE** will waive the difference between the **NET PAYOFF** and the **ACTUAL CASH VALUE** of the **PROTECTED VEHICLE** as of the **DATE OF LOSS**.

H. **NET PAYOFF:** The lesser of 1) the amount owed to **US** by **YOU** according to **YOUR** payment history on the **DATE OF LOSS**; or 2) the amount owed to **US** by **YOU** as calculated in accordance with terms and conditions of the **FINANCING CONTRACT** resulting from the early termination of the **FINANCING CONTRACT** that is secured by the **PROTECTED VEHICLE**. The **NET PAYOFF** does not include any unearned finance charges, lease or finance charges, late charges, any delinquent payments, uncollected service charges, refundable prepaid taxes and fees, disposition fees, termination fees, penalty fees, the recoverable portion of finance insurance charges, or the recoverable portion of financed amounts for unearned insurance premiums, **SUBROGATED DEDUCTIBLE** or refundable charges (including but not limited to, vehicle service contracts or other ancillary products) that are owed by the **CUSTOMER** on the **DATE OF LOSS** and any amounts that are added to the **FINANCING CONTRACT** or lease balance after the inception date of the **FINANCING CONTRACT**. **NET PAYOFF** also excludes loans or special finance offers which may waive or delay payment of principal or interest or any associated fees including but not limited to skipped or deferred payments.

I. **PRIMARY CARRIER:** The insurance company that: 1) is secured by **YOU** to provide physical damage coverage, as required in the **FINANCING CONTRACT** on a **PROTECTED VEHICLE**, or 2) provides liability coverage to any person who has caused **YOUR PROTECTED VEHICLE** to incur a **CONSTRUCTIVE TOTAL LOSS** and for which that person is legally liable.

J. **PROTECTED VEHICLE:** The vehicle shown on Page 1 must be a private passenger automobile, SUV or light truck of no more than 12,500 lbs. GVWR, that is of the current or previous 14 model years old and not otherwise excluded from this GAP Addendum that appears in the J. D. Power Official Used Car Guide or equivalent guide. A new **PROTECTED VEHICLE** is a vehicle that is (1) of the current or immediately previous model year; (2) has less than 6,001 miles at the time of purchase/lease; and (3) has not been titled. A used **PROTECTED VEHICLE** is a vehicle that is (1) older than the immediately previous model year, and/or (2) has more than 6,000 odometer miles at the time of purchase/lease; and/or (3) has been previously titled. A **PROTECTED VEHICLE** utilized for any commercial purpose is excluded unless the **COMMERCIAL USAGE** option has been purchased.

K. **SUBROGATED DEDUCTIBLE:** The amount **YOUR PRIMARY CARRIER** may recover on **YOUR** behalf from the at-fault driver's insurance company, if the accident was not **YOUR** fault, up to the maximum deductible coverage of one thousand dollars ($1,000).

L. **UNRECOVERED THEFT:** A **PROTECTED VEHICLE** theft reported as stolen to both the police and the **PRIMARY CARRIER** at the discovery of loss who have made every effort, yet have failed to find and return the **PROTECTED VEHICLE**. A **PROTECTED VEHICLE** that is confiscated or improperly taken or secreted by **YOU**, where both **YOUR** and the **PROTECTED VEHICLE'S** whereabouts are not known shall not be deemed for the purposes of this addendum as an **UNRECOVERED THEFT** loss.

M. **VEHICLE VALUE AT LOAN/LOSS:** The lesser of (1) The manufacturer's suggested retail price (MSRP); (2) The selling price of the **PROTECTED VEHICLE**; (3) The **PROTECTED VEHICLE'S** retail value from the current, at date of loan, J.D. Power Official Used Car Guide.

## EXCLUSIONS

**This GAP Addendum does not cover loss or damage:**

A. Occurring prior to the effective date of this GAP Addendum.

B. In connection with a **FINANCING CONTRACT** effected prior to the effective date of this GAP Addendum.

C. Resulting directly or indirectly from any dishonest, fraudulent, criminal or illegal act or arising from an intentional act committed by **YOU or YOUR permissive user**.

D. Due to **YOU** or **YOUR** permissive user's intentional or criminal acts while committing a DUI/DWI, or while seeking to elude lawful apprehension or arrest by a law enforcement official and/or while committing a felony.

E. Due to war, whether declared or not declared, invasion, civil war, insurrection, rebellion, revolution, terrorism, riots or civil unrest.

F. Due to or resulting from wear and tear, freezing, mechanical or electrical breakdown or failures that cause loss or which leads to a fire.

G. Resulting from the **PROTECTED VEHICLE** being operated, used, or maintained in any race, speed contest or other contest.

H. If the **PROTECTED VEHICLE'S** title was ever branded, declared salvage, declared a lemon or rebuilt.

I. The following vehicles which are excluded from coverage: Any vehicle with a gross vehicle weight rating **(GVWR)** in excess of 12,500 lbs, Aston Martin, Avanti, Bentley, Bugatti, Daewoo, Ferrari, Lamborghini, Lotus, Maybach, McLaren, Rolls Royce, Yugo, Dodge Sprinter, RV's, boats, ATV's, snowmobiles, motorcycles, trailers, cargo vans, limousine, taxi, buses, rental cars, and the following trucks: box trucks, dump trucks, flat bed, semi cab, towing and utility. In addition, vehicles with special commercial equipment, accessories, and body components are excluded. Vehicles used for **COMMERCIAL PURPOSES** that are not listed under **Definition B. Commercial Usage** are excluded from coverage. All vehicles listed in the J.D. Power Commercial Truck Guide or equivalent guide are excluded from coverage.

J. For any amounts deducted from the **PRIMARY CARRIER'S** settlement due to wear and tear, prior damage, unpaid insurance premiums, **SUBROGATED DEDUCTIBLE**, salvage, towing and storage, miscellaneous and other condition adjustments.

K. Attributable to other than the standard or optional equipment available from the manufacturer of the **PROTECTED VEHICLE**, including

but not limited to: special carpeting, furniture, bars, audio, video or data equipment, cooking and sleeping facilities, customized paint, or any equipment installed to overcome a physical handicap. Factory approved conversion packages and **DEALER** installed options usually included in used car value guidebooks are not excluded.

**L.** If **YOU** or **YOUR** permissive user (1) Intentionally concealed or misrepresented any material fact; and/or (2) Engaged in fraudulent conduct; and/or (3) Made a false statement in submitting a potential loss.

**M.** Due to the **UNRECOVERED THEFT**, fire or vandalism of the **PROTECTED VEHICLE** unless a police report has been filed at the discovery of loss.

**N.** If the loss is not reported within ninety (90) days of settlement with the **PRIMARY CARRIER** or, should there be no **PRIMARY CARRIER**, within ninety (90) days of the **DATE OF LOSS**.

**O.** Occurring after the expiration of any redemption period offered by the **ASSIGNEE** following the repossession or surrender of the **PROTECTED VEHICLE**.

**P.** In connection with a **FINANCING CONTRACT** where the purchase of this GAP Addendum is not listed as an additional charge on the **FINANCING CONTRACT** or the vehicle is purchased as a single payment loan or lease.

## CONDITIONS

A. **GAP ADDENDUM PERIOD, TERRITORY:** This GAP Addendum shall be effective for the term reflected on Page 1, and will only cover losses that occur during the original **FINANCING CONTRACT** term of a **PROTECTED VEHICLE** in the United States, its territories and possessions and Canada.

B. **FINANCING CONTRACTS WITH NON-UNIFORM PAYMENT TERMS:**

If the first monthly payment is due more than forty-five (45) days after the date of the **FINANCING CONTRACT**, for the purpose of loss settlement the **FINANCING CONTRACT** shall be amortized as if the first monthly payment were due in forty-five (45) days, using equal monthly payments, applying the lowest interest rate applicable at any time during the term of the **FINANCING CONTRACT**.

  (1) If the **FINANCING CONTRACT** is a loan with a balloon payment at the end of the **FINANCING CONTRACT** term, for the purpose of loss settlement, the **FINANCING CONTRACT** shall be amortized using the method below that results in the lower balance at the time of the **CONSTRUCTIVE TOTAL LOSS** or **UNRECOVERED THEFT**:

    a) The amortization schedule specified in the **FINANCING CONTRACT**, or

    b) Full amortization of the **FINANCING CONTRACT** to zero balance using equal monthly payments and the **FINANCING CONTRACT** interest rate over the **FINANCING CONTRACT'S** original term.

  (2) All other **FINANCING CONTRACTS** with non-uniform payment terms shall be amortized on a simple interest basis over the stated **FINANCING CONTRACT** term using the lowest interest rate applicable at any time during the **FINANCING CONTRACT** term and equal monthly payments.

  (3) If the **FINANCING CONTRACT** is a lease, the residual value of the **PROTECTED VEHICLE** on the last day of the lease term shall be the residual value stated in the leasing contract or the *Automobile Lease Guide* (ALG) Used Vehicle Guide residual value of the **PROTECTED VEHICLE** shown in the most current version of the guide on the effective date of the lease, whichever is less.

  (4) If the **FINANCING CONTRACT** is a revolving line of credit or credit card, for the purpose of loss settlement, the **FINANCING CONTRACT** shall be amortized only to that amount attributable to purchase of the **PROTECTED VEHICLE**, its accessories and any add-on items that were purchased on the same date as the **PROTECTED VEHICLE**. Such amount will be amortized to a zero balance using the lowest interest rate at any time during the **FINANCING CONTRACT** term. The **FINANCING CONTRACT** term shall be determined as follows: a) For **PROTECTED VEHICLES** with a MSRP or J.D. Power Official Used Car Guide "Retail" value of $5,001 or more the **FINANCING CONTRACT** term shall be 60 months. b) For **PROTECTED VEHICLES** with a MSRP or J. D. Power Official Used Car Guide "Retail" value of $2,501 to $5,000, the **FINANCING CONTRACT** term shall be 48 months. c) For **PROTECTED VEHICLES** with a MSRP or J. D. Power Official Used Car Guide "Retail" value of $2,500 or less, the **FINANCING CONTRACT** term shall be 36 months.

C. **MITIGATION OF LOSS: YOU** should do all things reasonable and practical to avoid or reduce any loss under this GAP Addendum and to protect the **PROTECTED VEHICLE** from any further loss. **YOU** should also take reasonable measures to ensure that the maximum amount of **ACTUAL CASH VALUE** of a **PROTECTED VEHICLE** is paid by the **PRIMARY CARRIER**. Any loss due to **YOUR** failure to protect the PROTECTED VEHICLE or maximize settlement from the **PRIMARY CARRIER** shall not be recoverable under this GAP Addendum.

D. **DECLARATIONS:** By accepting this GAP Addendum, **YOU** acknowledge the agreements and representations in the GAP Addendum and agree that this GAP Addendum is issued based upon the truth of such representations.

E. **ASSIGNMENT:** This GAP Addendum will follow the **FINANCING CONTRACT** with no subrogation rights against the **CUSTOMER**, if the **FINANCING CONTRACT** is sold or assigned by the **DEALER**. This addendum shall not be assigned, ceded or transferred by **YOU**.

---

**LOSS DOCUMENT PROCEDURES:** All benefit requests must be submitted and required documentation provided to the GAP Administrator within ninety (90) days of settlement from a **PRIMARY CARRIER**; or if no insurance coverage is in effect on the **DATE OF LOSS** within ninety (90) days of the accident, theft or discovery of loss. No GAP **WAIVER BENEFIT** will be waived if the benefit request is not submitted and required documentation provided by **YOU** within these stated time periods. **YOU** shall report any potential loss to the GAP Administrator at https://dashboard.classictrak.com/consumer. **YOU** must provide the following and any other additional information **WE** may request: 1) a copy of the primary insurance valuation and settlement worksheets and check; 2) verification of any other insurance or other recoverable items (including sale of salvage); 3) verification of any other refundable amounts; 4) a copy of the **FINANCING CONTRACT** and a copy of this GAP Addendum; 5) Copy of the Buyers Order; 6) verification of the primary insurance

GAP Complete 150% (04/22)

**LOSS DOCUMENTS PROCEDURES CONTINUED:** deductible and the date of loss; 7) a copy of the accident/police/fire report; 8) payment history; 9) Upon request, a sworn proof of loss form, and/or examination under oath; 10) any additional reasonable documentation requested by the GAP Administrator. All amounts waived as the result of this GAP Addendum shall be applied to the **FINANCING CONTRACT** balance after satisfactory presentation and acceptance of all information listed above to the GAP Administrator. Loss processing will not be made until **YOU** have recovered all amounts from any insurance or other indemnity which is valid and collectible and from any other recoverable or refundable source.

## MEDIATION/ARBITRATION

**Mediation** - If a dispute arises out of this contract, and if the dispute cannot be settled through negotiation, the parties agree first to try in good faith to settle the dispute by mediation before resorting to arbitration, litigation, or some other dispute resolution procedure. The parties agree to use a mediator selected by the defendant and to convene the mediation in the residing city of the defendant. The fees for the mediation will be borne equally by the parties.

**Arbitration** - It is understood and agreed that the transaction evidenced by this GAP Addendum takes place in and substantially affects interstate commerce. Any controversy or dispute arising out of or relating in any way to this GAP Addendum or the sale of this GAP Addendum, including for recovery of any benefit request under this GAP Addendum including the applicability of this arbitration clause and the validity of this GAP Addendum shall be resolved by neutral binding arbitration on an individual basis without resort to any form of class action or any other collective or representative proceeding by the American Arbitration Association (AAA), under the Commercial Arbitration Rules in effect at the time the benefit request is filed. All preliminary issues of arbitration will be decided by the arbitrator.

1. The arbitration shall take place in the county of residence of the **CUSTOMER** unless another location is mutually agreed upon by the parties. The arbitration shall take place before a single arbitrator selected in accordance with the AAA Commercial Arbitration Rules. AAA rules and forms may be obtained and all benefit requests shall be filed at www.adr.org. or at any AAA office.

2. The cost of the arbitration shall be borne by **US** except that each party must bear the cost of filing and the cost of its own attorneys, experts and witness fees and expenses. **YOU** may seek a waiver of the filing fee under the applicable AAA rules. If the arbitrator holds that a party has raised a dispute without substantial justification, the arbitrator shall have the authority to order that the cost of the arbitration proceedings be borne by the other party.

3. It is understood and agreed that the arbitration shall be binding upon the parties, that the parties are waiving their right to seek remedies in court, including the right to a jury trial. **YOU** will not be able to participate as a representative or member of any class of claimants. An arbitration award may not be set aside in later litigation except upon the limited circumstances set forth in the Federal Arbitration Act. An award in arbitration will be enforceable under the Federal Arbitration Act by any court having jurisdiction.

4. All statutes of limitations that would otherwise be applicable shall apply to any arbitration proceedings.

If any portion of this arbitration provision is deemed invalid or unenforceable, the remaining portions of this arbitration provision shall nevertheless remain valid and in force. In the event of a conflict or inconsistency between this arbitration provision and the other provisions of this GAP Addendum or any prior agreement, this arbitration provision shall govern.

**PRIVACY NOTICE: WE** may collect nonpublic information received from **YOU** on this GAP Addendum and other documents, such as name, address, lender, coverage, pricing, terms, vehicle information and vehicle identification number. **WE** may disclose some or all of the information collected, as described above, to non-affiliated third parties in connection with the administration, processing, servicing, or payment of this GAP Addendum. **WE** do not disclose any nonpublic personal information to anyone else, except as permitted by law.

If **YOU** have any questions during the Term of this GAP Addendum regarding coverage, cancellations or claims **YOU** may reach the GAP Administrator by emailing **YOUR** questions to info@classictrak.com.

## STATE PROVISIONS

The cancellation fee is not applicable in Colorado, Indiana, Louisiana, Maine, Massachusetts, Missouri, New Hampshire, New Mexico, Oregon, South Carolina, Vermont, Wisconsin and Wyoming

**ALABAMA:** The cost of the GAP Addendum is not regulated and **YOU** should determine whether the cost of this GAP Addendum is reasonable in relation to the protection afforded by the GAP Addendum. In the event of early termination of the **FINANCING CONTRACT**, the **ASSIGNEE** shall provide, or cause the **DEALER/CREDITOR** to provide, within sixty (60) days of termination, any refund due to a **CUSTOMER** without requiring the **CUSTOMER** to request cancellation of the GAP Addendum.

**ALASKA**: The GAP Addendum will not waive the deductible on the **PRIMARY CARRIER'S** policy. The **CUSTOMER** will be responsible to pay the deductible portion to the **ASSIGNEE**.

**ARKANSAS:** The cost of the GAP Addendum is not regulated and **YOU** should determine whether the cost of this GAP Addendum is reasonable in relation to the protection afforded by the GAP Addendum.

**COLORADO: THE PURCHASE OF GAP IS NOT REQUIRED IN ORDER TO OBTAIN CREDIT OR ANY PARTICULAR OR MORE FAVORABLE CREDIT TERMS. THE CUSTOMER HAS THE RIGHT TO CONSULT AN INSURANCE AGENT TO DETERMINE WHETHER SIMILAR COVERAGE MAY BE OBTAINED AND AT WHAT COST. GAP BENEFITS MAY DECREASE OVER THE TIME OF THE CONSUMER CREDIT SALE OR CONSUMER LOAN.**

**NET PAYOFF** means the amount owed to **US** by **YOU**, in accordance with terms and conditions of the **FINANCING CONTRACT** resulting from the early termination of the **FINANCING CONTRACT** that is secured by the **PROTECTED VEHICLE**. The amount does not include any unpaid installments, legally permitted delinquency fees, insufficient funds checks, premium for creditor imposed property damage insurance and deferral fees that are owed by the **CUSTOMER** on the **DATE OF LOSS**. If this transaction contains a fee or premium for guaranteed automobile protection, all holders and assignees of this consumer credit transaction are subject to all claims and defenses

which the **CUSTOMER** could assert against the original **DEALER/CREDITOR** resulting from the **CUSTOMER'S** purchase of the GAP Addendum. **YOU** shall have ninety (90) days after the loss settlement from any property damage insurer or from the date the **ASSIGNEE** notifies the **CUSTOMER** of any deficiency balance owed, whichever is later, to seek a **GAP WAIVER BENEFIT**.

**CONNECTICUT:** There is no deductible coverage for vehicles that are leased. The **CUSTOMER** will be responsible to pay the deductible portion to the **ASSIGNEE**.

**GEORGIA:** To receive any refund due in the event of a **CUSTOMER'S** cancellation of the GAP Addendum or early termination of the **FINANCING CONTRACT** after the free look period of the GAP Addendum, the **CUSTOMER**, in accordance with the terms of the GAP Addendum, shall provide a written request to cancel to the **DEALER/CREDITOR**, GAP Administrator, or such other party. If the request to cancel is the result of the early termination of the **FINANCING CONTRACT** the **CUSTOMER** shall provide the written request to cancel within ninety (90) days of the occurrence of the event terminating the **FINANCING CONTRACT**.

**ILLINOIS: EXCLUSION**S D. is amended as follows: "while committing a DUI/DWI, or," is deleted. The GAP Addendum will not waive the deductible on the **PRIMARY CARRIER'S** policy where the **FINANCING CONTRACT** is designated as a "Lease". The **CUSTOMER** will be responsible to pay the deductible portion to the **ASSIGNEE**.

**INDIANA**: The **EXCLUSIONS** Section is amended to include; **FINANCING CONTRACTS** where the amount financed is less than 80% of MSRP are not eligible for participation in this GAP program. In the event of cancellation of the GAP Addendum due to early termination of the **FINANCING CONTRACT**, the **ASSIGNEE** shall provide, within sixty (60) days of termination, any refund due to a **CUSTOMER** without requiring the **CUSTOMER** to request cancellation of the GAP Addendum.   You may be able to obtain GAP coverage from your primary insurance carrier. For additional information or complaints, contact: Indiana Department of Financial Institutions at 800-382-4880 or by mail to 30 South Meridian Street, Ste. 300, Indianapolis, IN 46204-2759.

**KANSAS**: The **CONDITIONS** Section is amended by deleting **EXCLUSIONS C.** in its entirety. **EXCLUSIONS D.** is amended as follows: "while committing a DUI/DWI, or," is deleted.

**CONDITIONS** Section E. **ASSIGNMENT** is deleted and replaced by the following: **ASSIGNMENT**: This GAP Addendum will remain part of the **FINANCING CONTRACT** with no subrogation rights against **YOU** if the **FINANCING CONTRACT** or lease is assigned, sold or transferred by the **DEALER/CREDITOR**.

If **YOU** have **complaints** regarding this GAP Addendum **YOU** may contact the Office of the State Bank Commissioner, 700 S.W. Jackson #300, Topeka, KS 66603, http://www.osbckansas.org.  To file a **claim** and receive **GAP WAIVER BENEFITS**, contact the GAP Administrator at 13401 McCormick Drive, Tampa, FL, 33626, 800-930-4633, https://dashboard.classictrak.com/consumer/. **GAP coverage may not cancel or waive the entire amount owing at the time of loss.**

**LOUISIANA**: **NET PAYOFF**: The difference between the pay off amount on the date of loss and the **PRIMARY CARRIER** settlement. The **LIMIT OF LIABILITY** will not exceed $50,000. **LIMIT OF LIABILITY** includes the amount of **YOUR** physical damage deductible on the **PRIMARY CARRIER'S** policy up to $1,000. In the event that there is no **PRIMARY CARRIER** coverage in effect on the **DATE OF LOSS**, or if the **PRIMARY CARRIER** is declared insolvent, **ASSIGNEE** will only waive the difference between the **NET PAYOFF** as of the **DATE OF LOSS** and the **ACTUAL CASH VALUE (ACV)** for any amount deducted from the **PRIMARY CARRIER'S** settlement due to prior damage, unpaid insurance premiums, salvage, towing and storage and other condition adjustments.

**EXCLUSIONS J** is amended to read: J…." due to prior damage, unpaid insurance premiums, salvage, towing and storage and other conditions adjustments."

**MAINE:** The **EXCLUSIONS** section is amended to add P. The GAP Addendum will not apply to a **FINANCING CONTRACT** that is designated as "Lease". In the event of a **CUSTOMER'S** cancellation of the GAP Addendum or early termination of the **FINANCING CONTRACT**, after the GAP Addendum has been in effect beyond the free-look period, the **CUSTOMER** is entitled to a pro rata refund of any unearned portion of the GAP Addendum purchase price. In order to receive a refund, the **CUSTOMER**, in accordance with any applicable terms of the GAP Addendum, must provide a written request to the **DEALER/CREDITOR**, GAP Administrator or other party. If the **CUSTOMER** is cancelling the GAP Addendum due to the early termination of the **FINANCING CONTRACT**, the **CUSTOMER** must provide a written request within ninety (90) days of the event terminating the **FINANCING CONTRACT**.

**LOSS DOCUMENT REQUIREMENTS** section is deleted in its entirety and replaced with: **LOSS DOCUMENT REQUIREMENTS**: **YOU** shall report any potential loss to the GAP Administrator within ninety (90) days of settlement with the **PRIMARY CARRIER** or should there be no **PRIMARY CARRIER** within ninety (90) days of the **DATE OF LOSS**. A reasonable extension may be granted if **YOU** provide documentation evidencing an extenuating circumstance has prevented **YOU** from being able to report **YOUR** loss to the GAP Administrator within the stated time period. For each loss **YOU** must provide the following and any other additional information **WE** may request: 1) a copy of the primary insurance settlement worksheet and check; 2) verification of any other insurance or other recoverables (including sale of salvage); 3) verification of any other refundable amounts; 4) a copy of this GAP Addendum; 5) verification of the primary insurance deductible and the **DATE OF LOSS**; 6) a copy of the police report, in the case of an **UNRECOVERED THEFT**; 7) details of the **FINANCING CONTRACT** including **YOUR** name and address, account number, amount borrowed, interest rate, payment amount, **FINANCING CONTRACT** history and calculation of **NET PAYOFF** amount and; 8) any additional reasonable documentation requested by **OUR** GAP Administrator. If **OUR** GAP Administrator requests additional documents, a reasonable extension may be granted to allow **YOU** to submit this additional documentation. All amounts waived as the result of this GAP Addendum shall be applied to the **FINANCING CONTRACT** balance within thirty (30) days after satisfactory presentation and acceptance of all information listed above to **OUR** GAP Administrator. Loss processing will not be made until **YOU** have recovered all amounts from any insurance or other indemnity which is valid and collectible and from any other recoverable or refundable source."

**MARYLAND**: **ACTUAL CASH VALUE** means the proceeds of any insurance maintained on the **PROTECTED VEHICLE** paid by the **PRIMARY CARRIER**. If no **PRIMARY CARRIER** exists, the retail value will be determined by GAP Administrator using the nationally

or regionally recognized guide, such as J.D. Power Official Used Car Guide or Kelley Blue Book (KBB), based on the best information available on the **PROTECTED VEHICLE'S** options, mileage and condition.

**PRIMARY CARRIER** means a third party insurance company providing comprehensive/collision coverage on the **PROTECTED VEHICLE**.

**NET PAYOFF** - Subject to the limitations set forth below, the amount due to **US** as of the **DATE OF LOSS**.

Notwithstanding any provision of **YOUR FINANCING CONTRACT**, **NET PAYOFF** shall not include: (1) Any delinquent or deferred payments; (2) Past due charges; (3) Late payment charges; (4) Unearned interest; (5) Unearned rental payments; (6) The portion of any financed taxes or charges, including charges for credit life insurance, credit health insurance, credit involuntary unemployment benefit insurance, and mechanical repair contracts, actually refunded to the buyer or credited as a reduction to the loan balance; or (7) By agreement of the parties, the amount of any primary insurance deductible in excess of one thousand dollars ($1,000).

**EXCLUSIONS I & K** are deleted in their entirety.

**EXCLUSIONS J.** is amended as follows:  For any amounts deducted from the **PRIMARY CARRIER'S** settlement due to unpaid insurance premiums that were not included with the financing of the **PROTECTED VEHICLE**.

**MICHIGAN:**  To receive any refund due in the event of a **CUSTOMER'S** cancellation of the GAP Addendum or early termination of the **FINANCING CONTRACT** after the free look period of the GAP Addendum, the **CUSTOMER**, in accordance with the terms of the GAP Addendum, shall provide a written request to cancel to the **DEALER/CREDITOR**, GAP Administrator, or such other party. If the request to cancel is the result of the early termination of the **FINANCING CONTRACT** the **CUSTOMER** shall provide the written request to cancel within ninety (90) days of the occurrence of the event terminating the **FINANCING CONTRACT**.

## MINNESOTA:  THE GUARANTEED ASSET PROTECTION GAP ADDENDUM IS OPTIONAL. YOU DO NOT HAVE TO PURCHASE THIS PRODUCT IN ORDER TO BUY [OR LEASE] THIS MOTOR VEHICLE. YOU ALSO HAVE A LIMITED RIGHT TO CANCEL.

**MISSISSIPPI**: The Guaranteed Asset Protection (GAP) Addendum **YOU** are purchasing is between **YOU** and the **DEALER/CREDITOR** and is not supported by a manufacturer or distributor; however, this GAP Addendum is administered by Norman & Company, Inc./Classic. Terms defined in this GAP Addendum have the meanings set forth in **YOUR** GAP Addendum.

To receive any refund due in the event of a **CUSTOMER'S** cancellation of the GAP Addendum or early termination of the **FINANCING CONTRACT** after the free look period of the GAP Addendum, the **CUSTOMER**, in accordance with the terms of the GAP Addendum, shall provide a written request to cancel to the **DEALER/CREDITOR**, GAP Administrator, or such other party. If the request to cancel is the result of the early termination of the **FINANCING CONTRACT** the **CUSTOMER** shall provide the written request to cancel within ninety (90) days of the occurrence of the event terminating the **FINANCING CONTRACT**.

**NEBRASKA**: This GAP Addendum is not regulated by the Department of Insurance.

## NEVADA: A GAP Addendum is not a policy of liability or casualty insurance and does not satisfy the requirement to maintain liability insurance pursuant to NRS 485.185. Failure to make a timely payment under the terms of the FINANCING CONTRACT may void the GAP Addendum and a full refund or credit of the GAP Addendum purchase price will be made.

**NEW HAMPSHIRE**: If the GAP Addendum is being cancelled due to the termination of the **FINANCING CONTRACT**, a written notice to cancel shall be sent to the **DEALER/CREDITOR**, GAP Administrator, or other such party within ninety (90) days of the occurrence of the event terminating the **FINANCING CONTRACT**.

**NEW JERSEY:** In the event of cancellation or early termination of the GAP Addendum the **ASSIGNEE** must provide, or cause the GAP Administrator or **DEALER/CREDITOR** to provide, a refund within sixty (60) days of cancellation. If the cancellation is due to early termination of the **FINANCING CONTRACT**, the **CUSTOMER** is not required to request a refund.

**NORTH DAKOTA:** To receive any refund due in the event of a **CUSTOMER'S** cancellation of the GAP Addendum or early termination of the **FINANCING CONTRACT** after the free look period of the GAP Addendum, the **CUSTOMER**, in accordance with the terms of the GAP Addendum, shall provide a written request to cancel to the **DEALER/CREDITOR**, GAP Administrator, or such other party. If the request to cancel is the result of the early termination of the **FINANCING CONTRACT** the **CUSTOMER** shall provide the written request to cancel within ninety (90) days of the occurrence of the event terminating the **FINANCING CONTRACT**.

**OKLAHOMA:** To receive any refund due in the event of a **CUSTOMER'S** cancellation of the GAP Addendum, the **CUSTOMER**, in accordance with the terms of the GAP Addendum, shall provide a written request to cancel to the **DEALER/CREDITOR**, GAP Administrator, or such other party.

**OREGON**: **NET PAYOFF** is amended: If **CUSTOMER** has insurance the GAP Administrator must rely upon insurer's determination of **ACV**. If insurance does not cover the loss, ACV must be calculated using a regional or national guide.

In the event of cancellation of the GAP Addendum due to early termination of the **FINANCING CONTRACT**, the **ASSIGNEE** shall provide, or cause the GAP Administrator or **DEALER/CREDITOR** to provide any refund due to a **CUSTOMER** without requiring the **CUSTOMER** to request cancellation of the GAP Addendum.

**PENNSYLVANIA:** A portion of the charge for this GAP Addendum may be retained by the **Dealer.**

**SOUTH CAROLINA: THIS GAP ADDENDUM IS NOT REQUIRED TO OBTAIN CREDIT, NOR TO OBTAIN CERTAIN**

**TERMS OF CREDIT OR TO PURCHASE THE RELATED MOTOR VEHICLE. THIS GAP ADDENDUM WILL NOT BE PROVIDED UNLESS YOU SIGN AND AGREE TO PAY THE ADDITIONAL COST.** The sale of this GAP waiver is not permitted if the amount financed, less the cost of GAP, less the cost of credit insurance, and the cost of service contracts is less than eighty percent (80%) of the Manufacturers Suggested Retail Price for a new vehicle or the J.D. Power average retail value for used vehicles.

**TENNESSEE**: The cost of this GAP Addendum is not regulated and **YOU** have the responsibility to determine whether the cost of this GAP Addendum is reasonable in relation to the protection afforded by this GAP Addendum.

To receive any refund due in the event of a **CUSTOMER'S** cancellation of the GAP Addendum or early termination of the **FINANCING CONTRACT** after the free look period of the GAP Addendum, the **CUSTOMER**, in accordance with the terms of the GAP Addendum, shall provide a written request to cancel to the **DEALER/CREDITOR**, GAP Administrator, or such other party. If the request to cancel is the result of the early termination of the **FINANCING CONTRACT** the **CUSTOMER** shall provide the written request to cancel within ninety (90) days of the occurrence of the event terminating the **FINANCING CONTRACT**.

**UTAH**: This GAP Addendum is subject to limited regulation by the Utah Insurance Commissioner and a complaint regarding this GAP addendum may be submitted to the Commissioner at the Utah Department of Insurance.

To receive any refund due in the event of a **CUSTOMER'S** cancellation of the GAP Addendum or early termination of the **FINANCING CONTRACT** after the free look period of the GAP Addendum, the **CUSTOMER**, in accordance with the terms of the GAP Addendum, shall provide a written request to cancel to the **DEALER/CREDITOR**, GAP Administrator, or such other party. If the request to cancel is the result of the early termination of the **FINANCING CONTRACT** the **CUSTOMER** shall provide the written request to cancel within ninety (90) days of the occurrence of the event terminating the **FINANCING CONTRACT**.

**VERMONT**: **WE** must assign, sell or transfer, within fifteen (15) business days, the Retail Installment sale contract/loan/lease to a Financial Institution as defined in the subdivision 11101(32) of Title 8 to an entity licensed under subdivision 2209(a) (1) or (3) of Title 8 or this GAP Addendum is void and **YOU** will receive a full refund of the charges of this GAP Addendum. The extension of credit, the terms of the credit nor the terms of the related sale in the case of a motor vehicle are to be conditioned upon the purchase of a debt protection agreement.

**VIRGINIA:** To receive any refund due in the event of a **CUSTOMER'S** cancellation of the GAP Addendum or early termination of the **FINANCING CONTRACT** after the free look period of the GAP Addendum, the **CUSTOMER**, in accordance with the terms of the GAP Addendum, shall provide a written request to cancel to the **DEALER/CREDITOR**, GAP Administrator, or such other party. If the request to cancel is the result of the early termination of the **FINANCING CONTRACT** the **CUSTOMER** shall provide the written request to cancel within ninety (90) days of the occurrence of the event terminating the **FINANCING CONTRACT**.

**WASHINGTON**: 1. Any refund of the GAP Addendum purchase price that was included in the financing of the **PROTECTED VEHICLE** may be applied by the **ASSIGNEE** as a reduction of the overall amount owed under the **FINANCING CONTRACT**, rather than applying the refund strictly to the GAP Addendum purchase price. 2. The GAP Addendum is not credit insurance, nor does it eliminate the **CUSTOMER'S** obligation to insure the **PROTECTED VEHICLE** as provided by laws of this state. Purchasing a GAP Addendum does not eliminate the **CUSTOMER'S** rights and obligations under the vendor single-interest and collateral protection coverage laws of this state. In order to receive any refund due in the event of the **CUSTOMER'S** cancellation of the GAP Addendum or early termination of the **FINANCING CONTRACT** after the free look period, the **CUSTOMER**, must provide a written request to cancel to the **DEALER/CREDTIOR**, GAP Administrator or other such party, within ninety (90) days of the occurrence of the event terminating the **FINANCING CONTRACT**.

Customer Initials: _____

**WEST VIRGINIA:** To file a claim and receive **GAP WAIVER BENEFITS**, contact the GAP Administrator at 13401 McCormick Drive, Tampa, FL, 33626, 800-930-4633, https://dashboard.classictrak.com/consumer/. Once activation of **GAP WAIVER BENEFITS** has been initiated, and until such time as the request for a benefit under the GAP Addendum is resolved, the GAP Addendum shall not be terminated or cancelled, nor shall a request for a benefit under the GAP Addendum be denied, by the **DEALER/CREDITOR**, GAP Administrator or other designated party, solely due to the **CUSTOMER'S** failure to make monthly payments owed for the GAP Addendum purchase price. In order to receive any refund due in the event of **YOUR** cancellation of this GAP Addendum or early termination of the **FINANCING CONTRACT** after the free look period of this GAP Addendum, **YOU**, in accordance with the terms of the GAP Addendum, must provide a written request to cancel to the **DEALER/CREDITOR** or GAP Administrator within ninety (90) days after **YOUR** decision to cancel the GAP Addendum or the occurrence of the event terminating the **FINANCING CONTRACT**. Any cancellation of the GAP Addendum that occurs due to the **CUSTOMER'S** cancellation, early termination of the **FINANCING CONTRACT**, the result of a default under the **FINANCING CONTRACT**, or the repossession of the **PROTECTED VEHICLE** associated with the **FINANCING CONTRACT**, the refund due may be paid directly to the **ASSIGNEE** or GAP Administrator and may be applied by the **ASSIGNEE** as a reduction of the amount owed under the **FINANCING CONTRACT**, unless the **CUSTOMER** can show that the **FINANCING CONTRACT** has been paid in full.

**WISCONSIN**: A cancellation refund within the first **thirty** (30) days will also include the amount of the applicable finance charge. The **TERMINATION OF ADDENDUM** section is deleted in its entirety and replaced with: **TERMINATION OF ADDENDUM**: This GAP Addendum will terminate, no later than, the earliest of the following events: 1. Cancellation by the **CUSTOMER**; 2. Payment in full by the **CUSTOMER** of the **FINANCING CONTRACT**; 3. expiration of any redemption period following the repossession or surrender of the **PROTECTED VEHICLE** as defined in the **FINANCING CONTRACT**; 4. Upon total **CONSTRUCTIVE TOTAL LOSS** or **UNRECOVERED THEFT** of the **PROTECTED VEHICLE** specified in the **FINANCING CONTRACT**, after the **ASSIGNEE** has waived the gap amount or it is determined that no gap amount exists; 5. the date the **FINANCING CONTRACT** is prepaid or the **FINANCING CONTRACT** is refinanced; 6. in the event that a **PROTECTED VEHICLE** is sold, assigned or transferred by **YOU** before the expiration date of the **FINANCING CONTRACT**. It is **YOUR** responsibility to notify the **DEALER/CREDITOR** in writing, within ninety (90) days of a terminating event, unless prohibited by law, of **YOUR** request to cancel this GAP Addendum and to request a refund/credit of the GAP charges.

GAP Complete 150% (04/22)

The **CONDITIONS** provision is amended by deleting item B(1).

**WYOMING**: In the event of early termination of the **FINANCING CONTRACT**, the **ASSIGNEE** shall provide, or cause the **DEALER/CREDITOR** to provide, within sixty (60) days of termination, any refund due to a **CUSTOMER** without requiring the **CUSTOMER** to request cancellation of the GAP Addendum.

# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

Case No.: _____

Judge: _____

ERIC LEE BOUIE,

Plaintiff,

v.

GRAVITY AUTO, LLC

24717 Gratiot Ave., Eastpointe, MI 48021


And

CREDIT ACCEPTANCE CORPORATION

25505 W. 12 Mile Rd., Southfield, MI 48034

Defendants.

_____/


EXHIBIT D. - CORRESPONDENCE WITH GRAVITY AUTO THROUGH (CFPB) CONSUMER FINANCIAL PROTECTION BUREAU

# EXHIBITS D

D: Correspondence with Gravity Auto, through (CFPB) Consumer Financial Protection Bureau.

 An official website of the United States Government

 **Consumer Financial Protection Bureau** (https://www.consumerfinance.gov/)

Start a new complaint

‹ All complaints (.)

# 240723-15305724
**CLOSED**

 Submitted

| STATUS | PRODUCT | ISSUE |
|---|---|---|
| Submitted to the CFPB on 7/23/2024 | Vehicle loan or lease | Getting a loan or lease |

## We received your complaint. Thank you.

We will review your complaint. Depending on what we find, we will typically:

- Send your complaint to the company for a response; or
- Send your complaint to another state or federal agency, or help you get in touch with your state or local consumer protection office; or
- Let you know if we need more information to continue our work.

---

**YOUR COMPLAINT**

On June 07, 2024, purchased a vehicle from Gravity Auto Sales that violated 15 U.S. Code § 1638. Which have adversely affected my credit report, my understanding of the financial obligations and terms associated with the purchase. As a consumer, I am entitled to clear and accurate disclosures to make informed decisions regarding credit transactions.

**ATTACHMENTS**

Revoke Signature.docx (17.6 KB)

Cease and desist.docx (17.1 KB)

Violation of 15 US code.docx (16.3 KB)

View full complaint ⊕

## ✓ Sent to company

**STATUS**

Sent to company on 7/23/2024

We've sent your complaint to the company, and we will let you know when they respond.

Their response should include the steps they took, or will take, to address your complaint.

Companies generally respond in 15 days. In some cases, the company will let you know their response is in progress and provide a final response in 60 days.

## ✓ Company responded

**STATUS**

Company responded on 8/7/2024

**RESPONSE TYPE**

Closed with explanation

### Company's Response

Thank you for your feedback. Julia, our Senior Compliance Analyst, tried to call you to discuss your concerns in more detail, but you disconnected the call. I understand that you have questions about the terms in your Retail Installment Contract. I am happy to help. I've attached a copy of your contract, which shows that you and Valerie Hollis bought a 2019 Dodge Durango from Gravity Auto Sales on June 7, 2024. On Page 1, you'll find the truth-in-lending disclosures, including the 16.99% APR, $23,282.78 finance charge, $38,693.38 amount financed, $61,976.16 total of payments, $2,000 down payment, and $63,976.16 total sale price. Please recall that you made the down payment directly to the dealership, and Credit Acceptance didn't receive any portion of it. You'll also see that liability insurance coverage isn't included—instead, it's your responsibility to insure the Durango. Your initials appear in the bottom righthand corner of the page. My investigation suggests you were aware of and received all the financing disclosures on the day of the sale. Indeed, you signed the attached Credit Acceptance Corporation

Disclosure Form confirming that you had a chance to read and ask questions about the contract terms, personally negotiated the Durango's cash price with the dealership, had an opportunity to negotiate the APR, and bought the Durango on terms acceptable to you. You also signed the attached Declaration Acknowledging Electronic Signature Process, which contains the truth-in-lending disclosures at the top of the page. As you'll see from the attached transaction history, to date you've paid $860.78 in total toward your outstanding account balance. While we don't refinance contracts at Credit Acceptance, you're always welcome to explore refinancing options with other finance companies, banks, or credit unions. If you ever need a payoff quote in connection with a refinance, just give us a call at (800) 634-1506 and we'll be happy to assist you. On a final note, you suggested that you don't want to hear from us anymore. While I've noted your account with your request to stop contact, please keep in mind that you'll still receive communications we're legally required to send—and (where necessary and appropriate) other collection activity may continue. You're always welcome to call us at (800) 634-1506 if you've ever like to discuss your account. You can also update your Communication Preferences in the Customer Portal. I hope we've resolved your concerns. If you have follow-up questions, feel free to reach out to Julia at (855) 862-5100.

**ATTACHMENTS**

240807 CFPB
Response Pkt.
Bouie, E.pdf
(5.1 MB)

# Feedback requested

| STATUS | FEEDBACK DUE |
|---|---|
| Feedback requested on 8/7/2024 | 10/6/2024 |

## Provide feedback about the company's response

We welcome your feedback on how the company responded to your complaint. You will have 60 days from when the company responded to share your feedback. The CFPB will share your feedback responses with the company and use the information to help the CFPB's work with consumer complaints.

Submit your feedback

 Closed

The CFPB has closed your complaint.

---

Privacy Act Statement

OMB #3170-0011

Note on user experience

Have a question? ¿Preguntas?

(855) 411-2372

TTY/TTD: (855) 729-2372

8 a.m. to 8 p.m. ET, Monday through Friday
(except federal holidays). (https://www.opm.gov/policy-data-oversight/pay-
leave/federal-holidays/#url=Overview)

More than 180 languages available.

 An official website of the United States Government

# UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF ILLINOIS

Case No.: _____

Judge: _____

ERIC LEE BOUIE,

Plaintiff,

v.

GRAVITY AUTO, LLC

24717 Gratiot Ave., Eastpointe, MI 48021


And

CREDIT ACCEPTANCE CORPORATION

25505 W. 12 Mile Rd., Southfield, MI 48034

Defendants.

_____/


EXHIBIT G. - ILLINOIS RESIDENCY PROOF

# EXHIBITS G

G: Illinois Residency Proof



# UNITED STATES DISTRICT COURT

### NORTHERN DISTRICT OF ILLINOIS

Case No.: _____

Judge: _____

ERIC LEE BOUIE,

Plaintiff,

v.

GRAVITY AUTO, LLC

24717 Gratiot Ave., Eastpointe, MI 48021


And

CREDIT ACCEPTANCE CORPORATION

25505 W. 12 Mile Rd., Southfield, MI 48034

Defendants.

_____/


EXHIBIT F. - FEDERAL STATUS EXCERPTS (MVICSA, FTC ACT, TILA, MAGNUSON-MOSS)

# EXHIBITS F

F: Federal Statutes Excerpts (MVICSA, FTC Act, TILA, Magnuson-Moss)

# Federal statues Excerpts (MVICSA, FTC act, TILA, Magnuson-Moss)

---

## 1. Motor Vehicle Information and Cost Savings Act (MVICSA) – 49 U.S.C. § 32701 et seq. (Odometer Act)

Excerpts:

- 49 U.S.C. § 32703(2):

"A person may not disconnect, reset, alter, or have disconnected, reset, or altered, an odometer of a motor vehicle intending to change the mileage registered by the odometer."

- 49 U.S.C. § 32710(a):

"A person that violates this chapter… is liable to the person injured for three times the amount of actual damages or $10,000, whichever is greater."

Context: Protects consumers from odometer fraud in vehicle sales/financing.

---

## 2. Federal Trade Commission Act (FTC Act) – 15 U.S.C. § 45(a)

Excerpts:

- Section 5(a)(1):

"Unfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful."

- Section 5(a)(2):

"The Commission is hereby empowered and directed to prevent persons, partnerships, or corporations… from using unfair methods of competition in or affecting commerce and unfair or deceptive acts or practices in or affecting commerce."

Context: Basis for claims of unfair/deceptive business practices (e.g., hidden fees, fraudulent contracts).

---

## 3. Truth in Lending Act (TILA) – 15 U.S.C. § 1601 et seq.

Excerpts:

- 15 U.S.C. § 1601(a):

"The informed use of credit results from an awareness of the cost thereof by consumers. It is the purpose of this subchapter to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available… and to protect the consumer against inaccurate and unfair credit billing and credit card practices."

- 15 U.S.C. § 1638(a): (Required disclosures in credit sales)

"In connection with each consumer credit sale not under an open end credit plan, the creditor shall disclose each of the following items… (1) the identity of the creditor; (2)

the amount financed; (3) the finance charge; (4) the annual percentage rate; (5) the total of payments; (6) the number, amount, and due dates of payments…"

Context: Ensures lenders disclose finance charges, interest rates, and total costs — central to auto loan disputes.

---

## 4. Magnuson-Moss Warranty Act – 15 U.S.C. § 2301 et seq.

Excerpts:

- 15 U.S.C. § 2302(a):

"The Commission shall prescribe rules requiring that the terms of any written warranty on a consumer product be made available to the consumer prior to the sale of the product to him."

- 15 U.S.C. § 2310(d)(1):

"A consumer who is damaged by the failure of a supplier, warrantor, or service contractor to comply with any obligation under this chapter… may bring suit for damages and other legal and equitable relief."

Context: Governs warranties on consumer products, including cars — allows lawsuits for breach of warranty and deceptive warranty practices.